YALDA SATAR (SBN 304366)
    ysatar@cair.com
Council on American-Islamic Relations-CA
2180 W. Crescent Ave, Suite F
Anaheim, CA 92801
T: (714) 776-1177 /F: (714)776-8340

CHARLES D. SWIFT (*Pro Hac Vice* Pending)
    cswift@clcma.org
PEI YU (*Pro Hac Vice* Pending)
    pyu@clcma.org
Constitutional Law Center for Muslims in America (CLCMA)
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507; Fax: (972) 692-7454

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED AL SERAJI,<br><br>*Plaintiff,*<br><br>vs.<br><br>PETER NEFFENGER in his official capacity; JEH JOHNSON, in his official capacity; JAMES COMEY, in his official capacity; CHRISTOPHER M. PIEHOTA, in his official capacity; LORETTA LYNCH, in her official capacity; AGENT NICHOLAS VICENCIA, in his individual capacity<br><br>*Defendants.* | Case No.: _____<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:<br><br>1. VIOLATION OF FIFTH AMENDMENT RIGHTS<br>2. VIOLATION OF MARITIME TRANSPORTATION SECURITY ACT<br>3. VIOLATION OF ADMINISTRATIVE PROCEDURES ACT<br>4. VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866 |

## INTRODUCTION

1.     Plaintiff Mohamed Al Seraji was improperly denied a Transportation Worker Identification Credential, also known as a TWIC card, when he applied for one with the Transportation

Security Administration ("TSA").   The TSA and the Federal Bureau of Investigation ("FBI")

interviewed the Plaintiff, and the TSA subsequently rejected the Plaintiff's application.   The FBI then

requested that Plaintiff be its informant in exchange for receiving a TWIC card.   Plaintiff declined this

request, and the TSA then refused to substantively review his appeal.   This denial caused Plaintiff to

lose the job that he had been offered, and deprived him of his liberty and property rights.   Plaintiff now

seeks declaratory judgment, injunctive relief, and damages against Defendants based on the Fifth

Amendment of the United States Constitution due to failure to afford Plaintiff his procedural due process

rights, failure to abide by the Maritime Transportation Security Act ("MTSA") and the Administrative

Procedural Act ("APA"), and deliberate and willful violation of Plaintiff's civil rights and due process

rights under Section 1981 of the Civil Rights Act of 1866.

2.        Plaintiff waives his right to a jury trial.

## VENUE AND JURISDICTION

3.        Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 (2012) and 5 U.S.C.

§ 702, as a civil action arising under the Constitution and the laws of the United States. The Court also

has the authority pursuant to 28 U.S.C. §§ 2201 and 2202.

4.        Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1) (2012),

because this is a claim against the United States, and Plaintiff resides in this District, which is also where

the acts in question took place.   There is no real property involved in this action.

## PARTIES

5.        Plaintiff Mohamed Al Seraji is an American citizen residing in Anaheim, California.

6.        Defendant Peter Neffenger is the duly appointed and confirmed Administrator of the

Transportation Security Administration ("TSA") of the United States.

7.        Defendant Jeh Johnson is the duly appointed and confirmed Secretary of the Department

of Homeland Security ("DHS"). The Administrator of the TSA reports directly to him.

8. Defendant James Comey is the duly appointed and confirmed Director of the Federal Bureau of Investigation ("FBI").

9. Defendant Christopher M. Piehota is the Director of the Terrorist Screening Center ("TSC"), which is a multi-agency center administered by the FBI.

10. Defendant Loretta Lynch is the duly appointed and confirmed Attorney General of the Department of Justice. The Director of the FBI reports directly to her.

11. Defendant Nicholas Vicencia is an FBI agent located at the FBI's Los Angeles Office.

12. Defendants Neffenger, Johnson, Comey, Piehota, and Lynch are sued in their official capacities. Defendant Vicencia is sued in his individual capacity.

## FACTUAL ALLEGATIONS

A. **Procedures Governing Issuance of "TWIC" Cards**

13. Under the Maritime Transportation Security Act ("MTSA"), the Secretary of the Department of Homeland Security ("DHS") shall issue a security card to a person who needs access to an area of a vessel or facility that is designated as a secure area by the Secretary, for purposes of a security plan for the vessel or facility. Pursuant to the statute, this security card shall be issued unless the person is disqualified under the MTSA.[1]

14. Congress also mandates an appeals process for people who are denied access to a secure area under the MTSA, which states that "the Secretary shall establish an appeals process under this section for individuals found to be ineligible for a transportation security card that includes notice and an opportunity for a hearing."[2] Congress did not choose to preclude judicial review for people who are found ineligible for a transportation card, regardless of the ground upon which they are found ineligible,

---

[1] 46 U.S.C. § 70105(a)–(b) (West, Westlaw through P.L. 114-200).
[2] § 70105(c)(4).

and Congress included no mandate in the language of the statute to exhaust administrative remedies before individuals seek judicial review.[3]

15.     In response to the MTSA, the DHS promulgated regulations regarding people's access to secure areas.[4] These regulations created the Transportation Worker Identification Credential, known as a TWIC card, and established procedures and standards for obtaining one.[5]

16.     Under this series of regulations, the TSA is the agency that conducts security threat assessments of applicants for TWIC cards before one may be issued. This assessment includes a fingerprint-based criminal history records check ("CHRC"), an intelligence-related check, and a final disposition.[6]

17.     To conduct an intelligence-related check under these regulations, the TSA must complete the following procedures: (1) review the applicant information required in 49 C.F.R. 1572.17 ("Applicant Information Required for TWIC Security Threat Assessment"); (2) search domestic and international government databases required to determine if the applicant meets the requirements of 49 C.F.R. 1572.105 ("Immigration Status"), 1572.107 ("Other Analyses"), and 1572.109 ("Mental Capacity"); (3) adjudicate the results of the check in accordance with 49 C.F.R. 1572.103, 1572.105, 1572.107, and 1572.109.[7]

18.     Under 49 C.F.R. § 1572.107 ("Other Analyses"), the TSA may determine that an applicant poses a security threat based on a search of the following databases: (1) Interpol and other international databases, as appropriate; (2) terrorist watchlists and related databases; and (3) any other databases relevant to determining whether an applicant poses, or is suspected of posing, a security threat, or that confirm an applicant's identity.[8]

---

[3] *See id.*
[4] *See* 49 C.F.R. § 1572.1 (West, Westlaw through 81 FR 51605).
[5] *See* § 1572.3.
[6] § 1572.21(a).
[7] § 1572.21(c).
[8] § 1572.107(a).

19.     If an applicant fails the TSA's security threat assessment, the TSA serves an Initial Determination of Threat Assessment on the applicant.[9] The TSA also serves this determination on the Federal Maritime Security Coordinator, the applicant's employer where appropriate, and the Coast Guard, if the TSA determines that the applicant does not meet the security threat assessment standards described in 49 C.F.R 1572.5 and may pose an imminent security threat.[10]

20.     Upon receiving the Initial Determination of Threat Assessment, the applicant has 60 days to initiate a written appeal and a request for material.[11] The TSA then has 60 days to respond.[12] However, the TSA may grant itself an extension of time for good cause, and the regulations do not provide any limits as to how many days or how many times the TSA can grant itself an extension, and do not define the meaning of "good cause" for this purpose.[13]

21.     The applicant may next serve upon the TSA a written reply to the Initial Determination of Threat Assessment within 60 days of service of the Initial Determination, or 60 days after the date of service of TSA's response to the applicant's request for materials.[14] The reply must include rationale and information on which the applicant disputes the Initial Determination.[15]

22.     Within 60 days after the TSA receives the applicant's reply, the TSA is required to serve a Final Determination of Threat Assessment or a Withdrawal of the Initial Determination.[16] The TSA's regulations do not address the issue of damages in the situation where the TSA denies an applicant's access improperly.

23.     Unlike applicants who are denied a TWIC card based on their immigration status, criminal records, or mental capacity, the regulations state that applicants who receive a Final Determination of

---

[9] § 1572.21(d).
[10] § 1572.21(d)(3).
[11] § 1519.9(b) (West, Westlaw through 81 FR 51605); § 1515.5(b)(1)-(2)(West, Westlaw through 81 FR 51605).
[12] § 1515.5(b)(3).
[13] § 1515.5(f).
[14] § 1515.5(b)(1).
[15] § 1515.5(b)(5)(i).
[16] § 1515.5(b)(6).

Threat Assessment based on "Other Analyses" are precluded from seeking judicial review.[17] This determination can only be reviewed administratively by the TSA.[18]

**B.     The Terrorist Watchlist**

24.     The Terrorist Watchlist is compiled by the Terrorist Screening Center ("TSC"), which was established in September 2003 by the Justice Department to consolidate the government's approach to terrorism screening.

25.   The TSC is administered by the FBI, which develops and maintains the federal government's consolidated Terrorist Watchlist (also referred to as the Terrorism Screening Database). Inclusion on the list is based only on a vague finding of reasonable suspicion that a nominated individual may have possible links to terrorism.

26.     The TSC has defined reasonable suspicion for this context as articulable facts which, taken together with rational inferences, reasonably warrant the determination that an individual is known or suspected to be, or has been, engaged in conduct constituting, in preparation for, in aid of or related to terrorism and terrorist activities.

27.     Individuals on the Terrorist Watchlist receive no formal notice of their inclusion on the Terrorist Watchlist or explanation for why they were placed on it.

28.     The FBI does not provide individuals who believe they have been placed on the Terrorist Watchlist with an avenue to appeal their placement on the Terrorist Watchlist.

**C.     Relevant Background**

29.     Plaintiff is a naturalized U.S. citizen of Yemeni origin. At age 13, he came to the United States with a green card obtained through his father. Plaintiff became a U.S. citizen in 2009.

---

[17] § 1515.9(e) ("A Final Determination issued under this section does not constitute a final order of [the] TSA as provided in 49 U.S.C. 46110.").
[18] *Id.*

6

30.     Plaintiff worked to support his family as an Uber driver, while attending college in California. However, he had to drop out of college and look for a full-time job. Plaintiff became a truck driver and attended the Toro School of Truck Driving. On September 9, 2015, Plaintiff successfully completed a Federal Motor Entry Level Class A Professional Tractor Trailer Driver Training Course. (Exhibit A). On September 29, 2015, Plaintiff was issued a Commercial Driver's License (CDL) by the state of California. (Exhibit B).

31.     After he obtained his CDL, a well-regarded shipping company named Emirates Shipping Line offered Plaintiff a job as a truck driver. (*See* Exhibit C). This offer was conditioned on the requirement that Plaintiff obtain a TWIC card from the TSA.

32.     In October 2015, Plaintiff sent a TWIC card application to the TSA.

33.     On October, 30, 2015, Mr. Wesley Williams, a TSA representative, left Plaintiff a voicemail and told him that he needed to come in for an interview. On the TSA's website, the TSA lists the three-step procedure to get a TWIC card: (1) complete an on-line application, (2) set an appointment with the TSA, and (3) provide required documents, fingerprints, photos and application fees at the appointment.[19] The standard procedure does not include a formal interview with the TSA or any other government authority.[20] Plaintiff was not informed by Mr. Williams that an FBI agent would be present in this meeting asking him questions that had no relation to his TWIC card application.

34.     When Plaintiff arrived, he was surprised by the presence of FBI Agent Nicholas Vicencia, who identified himself as "Nick" and showed his FBI badge to the Plaintiff. TSA representative Williams was also present during the interview. The interview began with general questions about where Plaintiff lived, studied, and how he immigrated to the United States.

---

[19] *See TWIC*, Transportation Security Administration, https://www.tsa.gov/for-industry/twic (last visited Aug. 11, 2016).
[20] *See* §§ 1572.17, 1572.21.

35.   FBI Agent Vicencia began questioning Plaintiff regarding whether he had been sent by someone in Yemen to work in American ports. Plaintiff stated that he came to the United States as a child, and has not returned to Yemen since.

36.   FBI Agent Vicencia then questioned Plaintiff about whether he had any affiliations with local or religious organizations other than his mosque. Plaintiff stated that he is not a member of any such other organization, nor is any member of his family. FBI Agent Vicencia asked if any of Plaintiff's friends were members of such groups, and Plaintiff replied that he had an acquaintance from the local mosque, Mohanad Badawi, whom Plaintiff learned from the news had recently been arrested. FBI Agent Vicencia asked whether Plaintiff and Badawi have discussed terrorism; Plaintiff said, "No," and clarified that he merely had brief conversations with him at the mosque.

37.   FBI Agent Vicencia asked Plaintiff to provide his usernames for all his social media accounts, and Plaintiff complied (despite this request being outside the realm of the TSA investigation or standard procedure for a TWIC card applicant). None of the questions or the information requested by Agent Vicencia relates to the standard procedure set forth in the regulations for obtaining a TWIC card.[21] FBI Agent Vicencia ended the meeting by telling Plaintiff that he should expect a decision with regard to his TWIC card soon, despite the TSA, not the FBI, being the agency with the authority to issue a TWIC card. FBI Agent Vicencia further stated that if the FBI had any questions in the future, it would contact Plaintiff.

38.   On December 8, 2015, Plaintiff received a letter from the TSA denying his application for a TWIC card. (*See* Exhibit D). Consequently, he was unable to accept the Emirates Shipping Line job offer. (*See* Exhibit C). The letter from the TSA stated that he was denied the TWIC card because the TSA decided that he was a security threat under 49 C.F.R.

---

[21] *See* §§ 1572.17, 1572.21.

§ 1572.107(a). This regulation provides that the TSA may determine that an applicant poses a security threat based on a search of the following databases: "(1) Interpol and other international databases, as appropriate, (2) terrorist watchlists and related databases, (3) any other databases relevant to determining whether an applicant poses, or is suspected of posing, a security threat, or that confirm an applicant's identity."[22] Plaintiff has no criminal record and has never been involved in or affiliated with any terrorist related activities or organizations.

39.     Shortly thereafter, Plaintiff received a phone call from FBI Agent Vicencia. Agent Vicencia told Plaintiff that he was outside of Plaintiff's house and wanted to come in and get to know Plaintiff better. FBI Agent Vicencia then stated that he was aware that Plaintiff had been denied a TWIC card, and that he could assist Plaintiff in getting a TWIC card. Plaintiff told FBI Agent Vicencia that he would not speak to him without the presence of his lawyer, Todd Gallinger, and provided FBI Agent Vicencia with the contact information for Mr. Gallinger.

40.     Later the same day, FBI Agent Vicencia called Plaintiff again and told Plaintiff that he called Mr. Gallinger but Mr. Gallinger did not answer. FBI Agent Vicencia stated that Mr. Gallinger was a "bad lawyer" and Plaintiff should hire a new one.

41.     Attorney Todd Gallinger is a Muslim attorney who is in good standing with the California bar. Despite the input from FBI Agent Vicencia, Plaintiff continued to insist that his chosen attorney, Mr. Gallinger, be present for future discussions.

42.     Mr. Gallinger called FBI Agent Vicencia to schedule a meeting. During the phone call, Agent Vicencia again mentioned the FBI's ability to assist Plaintiff with his attempts to obtain a TWIC card, and emphasized that he wanted to talk to Plaintiff about Mohanad Badawi, whom Plaintiff acknowledged as an acquaintance during his first meeting with Agent Vicencia.

---

[22] 49 C.F.R. § 1572.107(a).

9

43.     Present during Plaintiff's second meeting with FBI Agent Vicencia were Plaintiff's attorney Todd Gallinger and an armed Anaheim police officer, who upon information and belief was arranged by Agent Vicencia. No TSA official was present. This meeting was outside any established procedures set forth in the regulations for obtaining a TWIC card.

44.     FBI Agent Vicencia questioned Plaintiff regarding his relationship with Badawi. Plaintiff reiterated that he only knew Badawi as an acquaintance. FBI Agent Vicencia suggested that this was not true and that Badawi had mentioned Plaintiff to the FBI. Agent Vicencia further alleged that Plaintiff was interested in going overseas to join a terrorist group.

45.     Plaintiff denied the allegations and reiterated that he had only casual conversations with Badawi about topics such as Uber driving, work, and school.

46.     FBI Agent Vicencia pulled out pictures on which Plaintiff had clicked "like" on Facebook, including one of his cousin in Yemen holding a gun. Agent Vicencia asked Plaintiff why he clicked "like" on this picture, and Plaintiff answered because his cousin was in it.

47.     FBI Agent Vicencia did not identify any purported problems with these pictures or any relevance they had to Plaintiff's TWIC card application. However, Agent Vicencia repeatedly mentioned the TWIC card and his ability to assist Plaintiff in obtaining it.

48.     FBI Agent Vicencia then said that the FBI knew that, unlike his acquaintance Badawi, Plaintiff just wanted to take care of his family. Agent Vicencia also stated that the FBI was aware that Plaintiff's father had passed away and that Plaintiff was the primary caretaker of his family. Agent Vicencia stated that the FBI would like to "help" Plaintiff with the TWIC card situation, and implied he would be willing to assist if Plaintiff could assist the FBI.

49.     FBI Agent Vicencia further stated that the FBI would like Plaintiff to be the government's "eyes and ears on the ground" to "stop another San Bernardino from happening." FBI Agent Vicencia

told Plaintiff the FBI was interested in getting information on a specific group of individuals, but FBI Agent Vicencia did not specify whom.

50.     FBI Agent Vicencia ended the meeting abruptly when Plaintiff refused to work as an informant, and told Plaintiff that he would not receive a TWIC card. FBI Agent Vicencia thanked the Plaintiff for coming in and left the room.

**D.      Plaintiff's Effort to Appeal**

51.     On February 3, 2016, Plaintiff initiated the appeals process pursuant to 49 C.F.R. § 1515.9. (*See* Exhibit E). Plaintiff also requested all releasable documents utilized by the TSA in making its decision to deny Plaintiff's TWIC Card application. Plaintiff included the rationale and information on which he disputed the TSA's initial determination as well.

52.     The TSA responded to Plaintiff in a letter dated March 10, 2016. (Exhibit F). The TSA attached a five-page document, with heavy redactions, containing no useful information or any explanation as to why Plaintiff was deemed a security threat and what kind of watchlist, if any, Plaintiff was on. *Id.* The TSA further did not specify whether it had denied his appeal.

53.     On March 24, 2016, Plaintiff appealed the TSA's decision a second time. In this reply, Plaintiff also questioned the legality of the TSA's heavy redactions in the document and asked the TSA to give its legal justification for this practice. (Exhibit G).

54.     The TSA responded in a letter dated April 14, 2016. (Exhibit H). Similar to the TSA's letter dated March 10, 2016, the TSA did not substantively respond to Plaintiff's appeal and did not address the question of why Plaintiff was considered a security threat and what kind of watchlist, if any, Plaintiff was on. The letter stated that Plaintiff had 60 days from the date of the TSA's letter, dated March 10, 2016, to "serve upon [the] TSA an additional written reply to the Initial Notification of Threat Assessment." *Id.*

55.     On April 20th, 2016, Plaintiff replied to the TSA's April 14, 2016 letter. (Exhibit I). Plaintiff stated that he had appealed the TWIC card denial twice. Pursuant to its regulations, the TSA is required to respond within 60 days after an applicant's reply to the Initial Determination, and the TSA must serve a Final Determination of Threat Assessment or Withdrawal of the Initial Determination with its response. *Id.* This has yet to happen.

56.     Plaintiff now seeks judicial review of Defendants' inappropriate actions and Defendants' regulations and policies that prejudice Plaintiff and deny him due process of law.

**E.     FOIA Requests**

57.  On May 18th, 2016, Plaintiff filed a request for materials under the Freedom of Information Act. (Exhibit J). This request was rejected by the TSA on the ground that it was "too broad in scope or does not specifically identify the records [Plaintiff] seeks." (Exhibit K).

58.  On May 19th, Plaintiff filed another request for materials to the TSA under the Freedom of Information Act, and Plaintiff limited the scope of the request. (Exhibit L). This request was again rejected by the TSA for the same reason as the first request. (Exhibit M).

59.  On June 24th, 2016, Plaintiff filed a request for materials to the TSA under both the Freedom of Information Act and the Privacy Act, which was specific to information that the TSA had relied on in adjudicating Plaintiff's application for a TWIC card. (Exhibit N). As of the date of this filing, Plaintiff has not received any response from the TSA.

### FIRST CAUSE OF ACTION

#### Violation of the Fifth Amendment of the U.S. Constitution

#### (Against All Defendants)

60.     Plaintiff incorporates by reference the foregoing paragraphs ¶ 1 to ¶ 59.

61.     Defendants violated the Fifth Amendment of the United States Constitution because Defendants' regulations, policies, and practices violate Plaintiff's protected liberty and property interests

without the required due process of law.[23] Upon information and belief, Defendants violated the Equal Protection component of the Fifth Amendment's Due Process Clause by denying Plaintiff access to U.S. ports, attempting to coerce Plaintiff, and interfering with his contractual employment because of his race and national origin.

**A) Violation of the Procedural Due Process**

    *1)   Defendants Violated Plaintiff's Protected Liberty Interests and Protected Property Interests.*

    62.    The Supreme Court has held that there can be no doubt that the meaning of personal "liberty" must be broadly interpreted.[24] With regard to liberty interests in employment, the Supreme Court has repeatedly held that the right to engage in any common occupation is a protected liberty interest under the Constitution.[25] This is precisely what Plaintiff attempted to do, when he pursued the offer of employment extended to him.

    63.    Plaintiff has a protected liberty interest in his reputation as well.[26] Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.[27]

    64.    Plaintiff further has a protected property interest in obtaining a TWIC card, which is a government-issued license, since this license affects his ability to obtain employment.[28]

    65.    The denial of the TWIC card to Plaintiff triggers both protected property interests and protected liberty interests. This denial violates his protected property interests because it is a government-issued license that affects his ability to obtain a job in transportation. This denial violates his protected liberty interests because the card is directly related to his liberty interest in accepting the

---

[23] U.S. Const. amend. V; *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).
[24] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972).
[25] *Id.* at 572; *Truax v. Raich*, 239 U.S. 33, 41 (1915).
[26] *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).
[27] *Id.*
[28] *See Pastrana v. United States*, 746 F.2d 1447, 1450 (11th Cir. 1984).

job he was offered. Moreover, the denial of a TWIC card on a security basis puts his reputation at stake, because Defendants may serve the Initial Determination of Threat Assessment on the Federal Maritime Security Coordinator, the applicant's potential employer(s) and the Coast Guard if Defendants find it "appropriate."[29] Even if this Determination were not served, Plaintiff has already had to inform his prospective employer that he cannot accept the offered job, because he was denied a TWIC card and because of the reason given for this denial.

### 2)   Defendants Violated Plaintiff's Right to Due Process of Law.

66.     Defendants' practices, regulations, and policies failed to provide Plaintiff with his right to due process of law, including meaningful notice and hearing, when he was denied access to secure areas because of an unspecified terrorist watchlist for an unspecified reason.

67.     The DHS's appeals process fails to provide appropriate notice and opportunity for a hearing for individuals like Plaintiff, who are denied access to secure areas based on inclusion in terrorist watchlists.[30] First, the Terrorist Watchlist compiled by the TSC lacks due process by definition, because individuals on the Terrorist Watchlist receive no formal notice of their inclusion on the Terrorist Watchlist, and Defendants do not provide individuals who believe they have been placed on the on the Terrorist Watchlist with an avenue to appeal their placement on the Terrorist Watchlist. Second, the DHS's regulations preclude judicial review for individuals who are denied access based on the fact that they are on the Terrorist Watchlist, while giving all other denied individuals the right to sue in court. This unequal treatment is outside Congress's express or implied authorization. Third, the regulations allow the TSA to grant itself an extension of time for good cause, and the regulations do not provide any limits as to how many days or how many times the TSA can grant itself an extension, and the regulations do not define the meaning of "good cause." Consequently, Defendants can delay the process indefinitely,

---

[30] See 49 C.F.R. § 1515.9; § 1572.107(a).

as they have with Plaintiff. This procedure does not provide an applicant any meaningful opportunity to be heard.

**B) Violation of Equal Protection Rights**

68. Upon information and belief, Defendants denied Plaintiff access to U.S. ports based on his national origin and race, and improperly offered Plaintiff the TWIC card as a quid pro quo exchange for Plaintiff's agreement to work for the FBI as its informant.

69. Defendants' discriminatory intent is evident in the questioning and information requested, which is outside the scope and process of screening applicants for TWIC cards.[31]

70. Defendants' regulations do not provide a suitable damage remedy for these violations. Therefore, no other remedy is available to Plaintiff and he brings suit under the Fifth Amendment.[32]

## SECOND CAUSE OF ACTION

### Defendants Violated the Maritime Transportation Security Act ("MTSA")

### (Against All Defendants)

71. Plaintiff incorporates by reference the foregoing ¶ 1 to ¶ 59.

**A) The Regulations as Written Fail To Provide Required Notice and Hearing.**

72. Defendants violated the MTSA because they failed to establish an appropriate process which includes notice and an opportunity for a hearing, pursuant to 46 U.S.C. § 70105(c)(4) for individuals deprived of the liberty right inherent in a TWIC card.[33]

73. Defendants created a process which deprives any individual on "any terrorist watchlist" from the protected interests above, without avenue for redress as to inclusion on the watchlist in question. The Terrorist Watchlist itself is not even maintained by the TSA, despite the TSA being the entity charged with authority to determine entitlement to TWIC cards. Nonetheless, the TSA allows

---

[31] *Id.*
[32] *See Davis v. Passman*, 442 U.S. 228, 245–247 (1979).
[33] *Ibrahim v. Department of Homeland Security*, 669 F.3d 983, 990 (9th Cir.2012).

this determination to rest, in applicable circumstances, wholly on another agency's placement of an individual on the Terrorist Watchlist for no articulated reason.

74.     Individuals placed on the Terrorist Watchlist "have not been officially provided with any information about why they are not allowed to board commercial flights; they have not been officially informed whether they are on the No Fly List; if they are on the No Fly List, they have not been provided with an opportunity to contest their placement on the list; and they have not been provided with an in-person hearing."[34]   In relying on placement on this list with nothing more, Defendants have violated the MTSA by not providing notice and opportunity for hearing.

**B)     The Regulations as Applied to Plaintiff Violate the MTSA.**

75.     Defendants further violated the MTSA in that, as applied to Plaintiff, the regulations do not provide proper grounds for appeal of the denial of his TWIC card application.

76.     The MTSA provides that "the Secretary [of the DHS] *shall* issue a biometric transportation security card to an individual … unless the Secretary determines subsection (c) (criteria to deny individuals' access) that the individual poses a security risk warranting denial of the card."[35] (emphasis added.) The MTSA further requires that "the Secretary *shall* establish a process under this section for individuals found to be ineligible for a transportation security card that includes notice and an opportunity for a hearing."[36] (emphasis added.) Nowhere in the MTSA does Congress express an intent to set a different or lower level of due process for individuals who are denied a security card based on alleged inclusion on any terrorist watchlists.

77.     The statutory language of the MTSA creates legal benefits for individuals needing access to secure areas.[37] The language of the MTSA demonstrates that Congress intended to make these statutes

---

[34] *Latif v. Holder*, 969 F. Supp.2d 1293, 1297-1298 (D. Or. 2013).
[35] § 70105(b)(2) (emphasis added).
[36] § 70105(c)(4) (emphasis added).
[37] *Id.*

enforceable, and customary legal consequences for violation of these statutes include the availability of a lawsuit by the aggrieved individual.[38]  However, Plaintiff had no avenue for redress other than the TSA's internal, flawed procedure, by which the TSA failed to abide.

78.     Therefore, Defendants have violated the MTSA in failing to afford Plaintiff these rights, and Plaintiff now brings suit under this statute.

## THIRD CAUSE OF ACTION

### Defendants Have Violated the Administrative Procedural Act (APA)

### (Against All Defendants)

79.     Plaintiff incorporates by reference the foregoing ¶ 1 to ¶ 59.

80.     Defendants violated the Administrative Procedural Act ("APA") because Defendants' regulations and conclusions were arbitrary, capricious, an abuse of discretion, and not in accordance with law, and further violated Plaintiff's constitutional rights.[39]

81.     The relevant regulations preclude judicial review for individuals denied access to secure areas by virtue of inclusion on the Terrorist Watchlist, and allow the TSA to grant itself unlimited extensions of time to adjudicate appeals of the denial of TWIC cards. Congress did not give the DHS the authority to do this, and Congress unambiguously expressed its intent that people who are denied access to secure areas are entitled to due process of the law, including notice and meaningful opportunity to be heard, regardless of the basis for the individual's denial.

82.     The TSA failed to follow its own protocol in adjudicating Plaintiff's application for a TWIC card. The TSA and the FBI held a multi-agency interview with Plaintiff and requested documents

---

[38] *Id.*; *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979).
[39] 5 U.S.C. §§ 702, 706.

and information that were unrelated to his application. These actions are outside the scope of the TSA's own regulations for obtaining a TWIC card.[40]

83.    Upon information and belief, Defendants withheld a TWIC card from Plaintiff to take advantage of him. Defendants attempted to interfere with Plaintiff's right to counsel.[41]   Therefore, Defendants violated the APA and Plaintiff seeks relief under 5 U.S.C. §§ 702, 706.

## FOURTH CAUSE OF ACTION

### Defendant Vicencia Violated Section 1981 of the Civil Rights Act of 1866.

84.    Plaintiff hereby incorporates by reference the foregoing paragraphs ¶ 1 to ¶ 59.

85.    Defendant Vicencia violated 42 U.S.C. § 1981(a) when Defendant Vicencia improperly interfered with Plaintiff's right to exercise his employment contract, as citizens outside of his racially protected category may do without interference.

86.    Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts" regardless of race.[42]

87.    Defendant's actions demonstrate that he targeted Plaintiff based on Plaintiff's race and national origin. Defendant's actions directly and proximately caused Plaintiff's loss of his employment offer, and prevent him from contracting for employment with transportation companies in the future due to the lack of a TWIC card. These actions violate Section 1981 of the Civil Rights Act of 1866, as quid pro quo discrimination based on his race and national origin.

///

///

///

---

[40] *See* 49 C.F.R. §§ 1572.17, 1572.19; *TWIC*, Transportation Security Administration, https://www.tsa.gov/for-industry/twic (last visited Aug. 11, 2016).

[42] 42 U.S.C. § 1981(a) (West, Westlaw through P.L. 114-200).

**PRAYER FOR RELIEF**

Plaintiff therefore respectfully requests that the Court enter a judgment, including, but not limited to:

      a. Compensatory damages in an amount to be proven at trial;

      b. Punitive damages in an amount to be proven at trial;

      c. Nominal damages;

      d. Costs and reasonable attorneys' fees;

      e. Such additional and further relief as the Court deems just and equitable.

Respectfully submitted,

Yalda Satar
Charles D. Swift
Pei Yu

Dated: September 6, 2016

*Attorney for Plaintiff*

# EXHIBIT A

# Toro School of Truck Driving

*Bellflower      Los Angeles      Fullerton*

## Mohamed Ali Mohamed Al Seraji

*Has successfully completed a Federal Motor Entry Level Class A Professional Tractor Trailer Driver Training Course.*

Given this _09th_ day of _September_ _2015_



_____
*President*

_____
*Director of Education*

# EXHIBIT B

# CALIFORNIA USA

## COMMERCIAL DRIVER LICENSE

DL F1232346

EXP 07/25/2019

CLASS A

END NONE

LN AL SERAJI
FN MOHAMED ALI MOHAMED
168 N MULLER ST UNIT 103
ANAHEIM, CA 92801

DOB 07/25/1992

RSTR NONE

07251992

SEX M      HAIR BLK      EYES BLK
HGT 5'-07"      WGT 196 lb

ISS 09/29/2015

DD 11/12/2014607G8/A2FD/19

# EXHIBIT C



*We're Not Just A Shipping Company, We're Part of Your Solution!*

July 20, 2016

To Whom It May Concern:

This letter serves as confirmation that we at Emarat Shipping were going to hire Mr. Mohammed Alseraji as a truck driver for port drayage. Because Mr. Alseraji did not have a TWIC card to get into the port, we asked him to apply for one. We explained to him that we could not hire him until he obtained his TWIC card. However, because Mr. Alseraji's application was denied and he could not obtain his TWIC card, we could not hire him. If you have any questions, please contact me. I can be reached at 714.926.3406 or tareq@emaratshipping.com.

Sincerely,

Tareq K. Elbarq
(President)

# EXHIBIT D

U.S. Department of Homeland Security
Arlington, VA 20598



**Transportation
Security
Administration**

**DEC 0 8 2015**

**By First Class and Certified Mail – Return Receipt Requested**

Mohamed Ali Al Seraji
168 N Muller St., Unit 103
Anaheim, CA 92801-8818

Re:    Initial Determination of Eligibility

Dear Mr. Al Seraji:

The Transportation Security Administration (TSA) has determined that you **may not** be eligible to hold a Transportation Worker Identification Credential (TWIC). This letter is **not** a final decision. Instructions for preparing a response to this letter are enclosed. **TSA must receive your response within 60 calendar days of the date you receive this letter unless you request and TSA grants an extension of time to respond. If you do not provide a response to TSA within 60 calendar days of the date you receive this letter, or request an extension, TSA's determination regarding your eligibility assessment will automatically become final, and you will be disqualified from holding a TWIC.**

**RESULTS OF TSA'S ELIGIBILITY ASSESSMENT**

TSA has made an initial determination that you **may not** be eligible for a TWIC for the reasons set forth in Title 49, Code of Federal Regulations (C.F.R.), section 1572.107(a). If you believe that this information is not correct, you should provide TSA with all documentation or information that you believe TSA should consider in reviewing your application. If you do not provide TSA with such information, it is unlikely that TSA will be able to approve your application.

You have **not yet** been disqualified from holding a TWIC. This letter is an initial eligibility determination that notifies you of the decision made by TSA. The enclosure provided with this letter explains all options available to you when responding to TSA. You have the option to file an appeal, request a copy of the materials TSA used as the basis for making its determination, or request an extension of time so that you may gather additional materials for your response. These options are provided to you in accordance with 49 C.F.R. section 1515.9.

**INSTRUCTIONS TO SEND INFORMATION TO TSA**

The TSA TWIC Request Cover Sheet **must be attached** to the front of all documentation and information being submitted to TSA. This cover sheet can be found at the end of the enclosed attachment and includes your full name, mailing address, case number, and a place for you to provide your daytime telephone number. Please change any information on the cover sheet that is incorrect and indicate the type of request you are submitting to TSA by selecting the appropriate request option(s).

1

Correspondence **must** be mailed to:

> **Robert G. Seasonwein**
> **Assistant Chief Counsel**
> **Security Threat Assessment Operations**
> **TSA Headquarters**
> **12th Floor, TSA – 2**
> **601 South 12th Street**
> **Arlington, VA 20598**

Use of the enclosed cover sheet and above mailing address is the fastest means of communicating with TSA. Use of overnight services (other than the U.S. Postal Service) will delay your correspondence.

**You are not required to obtain an attorney. The enclosed attachment provides information on how to request releasable documents from TSA, submit an appeal, and/or request an extension of time.**

For your information, the TWIC is a vital security measure to help ensure that individuals who pose a threat do not gain unescorted access to secure areas of the nation's maritime transportation system. TWIC was established by Congress through the Maritime Transportation Security Act of 2002 (MTSA) and is implemented by regulations administered by TSA and the U.S. Coast Guard. Applicable MTSA regulations regarding assessments may be found at 49 C.F.R. sections 1515 and 1572, which are available on TSA's website, www.tsa.gov. A TWIC will not be issued if TSA determines that an individual does not meet the standards described in 49 C.F.R. section 1572.5.

Again, this letter is intended to notify you that you may not be eligible to hold a TWIC. **TSA must receive your response within 60 calendar days of the date you receive this letter unless you request and TSA grants an extension of time to respond. If you do not provide a response to TSA within 60 calendar days from the date you receive this letter, or request an extension, TSA's determination regarding your eligibility will automatically become final, and you will be disqualified from holding a TWIC.** Please review the enclosure which provides detailed instructions on how to submit information to TSA. If you have any questions, please correspond in writing to the address provided.

Sincerely,

Roderick Allison
Acting Deputy Administrator

Enclosure

### How To Request Releasable Materials, Submit An Appeal, And/Or Request An Extension Of Time

#### Can I Request Materials Upon Which The Eligibility Assessment Is Based?

Yes. You may request copies of the documents or information (releasable materials) that TSA used to determine that you may not be eligible to hold a Transportation Worker Identification Credential (TWIC). This request must be typed or legibly written and submitted to TSA within 60 calendar days from the date you receive the Initial Determination of Eligibility letter.

TSA will provide you with a copy of the releasable materials no later than 60 calendar days after receiving your request, or a longer period as TSA may determine for good cause. TSA does not disclose classified information, as defined in Executive Order 12968, Section 1.1(d), and TSA reserves the right not to disclose any other information or material not warranting disclosure or protected from disclosure under law.

#### Can I Appeal The Initial Eligibility Assessment?

Yes. You may submit an appeal (typed or legibly written) disputing TSA's initial determination, if you believe that you are eligible to hold a TWIC. This appeal must include the reason(s) why you dispute TSA's determination and you must provide supporting documents to verify that you meet the eligibility requirements to hold a TWIC.

> Other Eligibility Requirements: If your letter indicates that you do not meet other eligibility requirements to hold a TWIC under 49 C.F.R. section 1572.107(a), you may submit documentation to establish that you meet the eligibility requirements under this section.

#### What Is The Time Frame For An Appeal?

You must send your appeal request to TSA within 60 calendar days of the date you receive:

- TSA's initial eligibility determination; or
- TSA's response to your request for releasable materials, if such a request was made.

Within 60 calendar days of receipt of your appeal request, TSA will notify you whether or not your appeal request has been granted. Please note that for good cause, TSA may take longer than 60 calendar days to effect notification.

#### Can I Get An Extension Of Time?

If you need additional time in which to submit a request for documents, materials, information, and/or an appeal, you may seek an extension of time. A written request must be sent to TSA to the address provided below within 60 calendar days of the date you receive the Initial Determination of Eligibility letter. TSA will grant an extension of time if good cause is shown.

If the time period to submit a request for documents, materials, information, and/or an appeal has expired, you may send a written request describing why the failure to file within the time limits was excusable. TSA will grant an extension of time after the expiration of the time period if good cause is shown.

## WHERE DO I SEND MY REQUEST FOR DOCUMENTS, AN APPEAL, AND/OR EXTENSION OF TIME?

The TSA TWIC Request Cover Sheet found at the end of this letter **must be attached** to the front of all documentation and information being submitted to TSA. Please provide your daytime telephone number, make any necessary corrections to your full name and mailing address, and indicate the type of request you are submitting to TSA by selecting the appropriate request option(s).

### All correspondence must be mailed via U.S. Postal Service to the below listed address:

**Robert G. Seasonwein**
**Assistant Chief Counsel**
**Security Threat Assessment Operations**
**TSA Headquarters**
**12th Floor, TSA – 2**
**601 South 12th Street**
**Arlington, VA 20598**

## WHAT WILL HAPPEN IF I DO NOT REQUEST DOCUMENTS, AN APPEAL, AND/OR AN EXTENSION OF TIME?

If you take no further action, TSA's determination will automatically become final 60 calendar days from the date you receive the Initial Determination of Eligibility letter, your application will be closed, and you will not be eligible to hold a TWIC.

# EXHIBIT E



CONSTITUTIONAL LAW CENTER
*for MUSLIMS in AMERICA*

T 972.914.2507
F 972.692.7454
833 E. Arapaho Road
Suite 102
Richardson, TX 75081

clcma.org

<u>*Via Fedex: Signature Required*</u>.

Robert G. Seasonwein                                        February 3, 2016
Assistant Chief Counsel
Security Threat Assessment Operations
TSA Headquarters
12ᵗʰ Floor, TSA-2
601 South 12ᵗʰ Street
Arlington, VA 20598

Re: Mohammed Ali Al Seraji:
<u>Appeal of Initial Determination of Threat Assessment</u>
<u>And Request for Releasable Documents</u>

Dear Mr. Seasonwein:

    I am writing to you on behalf of our client, Mohamed Ali Al Seraji. Mr. Al Seraji received an Initial Determination of Threat Assessment letter from the Transportation Security Administration (TSA) dated December 8, 2015, stating that Mr. Al Seraji **"may not** be eligible to hold a Transportation Worker Identification Credential (TWIC)."

    Your stated basis for this determination was 49 CFR 1572.107(a), which states in part that "TSA may determine that an applicant poses a security threat based on a search of the following databases: (1) Interpol and other international databases, as appropriate. (2) Terrorist watchlists and related databases. (3) Any other databases relevant to determining whether an applicant poses, or is suspected of posing, a security threat, or that confirm an applicant's identity." Your Initial Assessment does not specify which section(s) the TSA used for its initial determination.

<u>Request for Releasable Documents</u>

    In accordance with 49 CFR 1515.5(b)(2), Mr. Al Seraji requests any and all, documentation supporting, justifying, and or authorizing the denial by the TSA in making their Initial Determination of Threat Assessment. We would request all notes or memoranda from the TSA files utilized by them in this initial denial and an explanation of when, why, and how the decisions were made to deny Mr. Al Seraji his TWIC credential. We further request any documentation of any communication between the TSA, FBI, Department of Homeland Security, NSA or the United States Attorney's Office regarding said denial. Documentation as used in these requests includes all paper, notes, payment records, reports, memoranda, emails and

1

references in whatever form, paper, electronic, or otherwise and wherever located or maintained within the government, including any personal or private files, whether maintained in government offices or elsewhere.

<u>Appeal of Initial Determination of Threat Assessment</u>

While it is difficult to specifically respond to a generic initial denial, which is the reason for our request for further documentation, it is clear that Mr. Al Seraji does not pose a security threat to this country. Mr. Al Seraji is a 23 year old American citizen with no criminal history or prior arrests. At the age of 13, Mr. Al Seraji immigrated to the United States from Yemen to join his father, who had been residing in the United States for 10 years. When Mr. Al Seraji turned 18, he dropped out of the local high school and enrolled in a local community college. For three semesters, Mr. Al Seraji attended community college.

When Mr. Al Seraji's father passed away in February 2014, Mr. Al Seraji became the primary caretaker of his mother and three younger siblings. After working as an Uber driver for a period of time, Mr. Al Seraji decided he needed to increase his income and he enrolled in a Tractor Trailer Driver Training course with the Toro School of Truck Driving and obtained his certificate. (*See* Attachment #1.) After completing the course, Mr. Al Seraji obtained his Commercial Driver's License. (*See* Attachment #2)  Emarat Shipping, Inc. offered Mr. Al Seraji a truck driver job on the condition that he obtain a TWIC card.  Mr. Al Seraji is currently unemployed as he has been unable to obtain his TWIC card.

As Mr. Al Seraji clearly does not pose a security threat, Mr. Al Seraji respectfully requests that the initial determination be withdrawn per 49 CFR 1515.9(d). If the initial determination is not withdrawn, Mr. Al Seraji will await the release of documents providing a basis for this determination and will file an appeal within "60 days after the date of service of TSA's response." 49 CFR 1515.5(b)(5)(i)

Thank you for your time and consideration.

Sincerely,

Enclosures/Attachments 1 & 2

**Marwa Elbially, Esq.**
Attorney for Mohamed Al Seraji
Constitutional Law Center for Muslims in America

2

# Toro School of Truck Driving

Bellflower    Los Angeles    Fullerton

## Mohamed Ali Mohamed Al Seraji

*Has successfully completed a Federal Motor Entry Level Class A Professional Tractor Trailer Driver Training Course.*

Given this ___09th___ day of ___September___ ___2015___

_____
President

_____
Director of Education





# EXHIBIT F

U.S. Department of Homeland Security
Arlington, Virginia 20598



**Transportation
Security
Administration**

## By Certified U.S. Mail – Return Receipt Requested

March 10, 2016

Ms. Marwa Elbially
Constitutional Law Center for Muslims in America
833 E. Arapaho Road, Suite 102
Richardson, TX 75081

    Re:  Mr. Mohamed Ali Al Seraji – Appeal of Initial Determination of Threat Assessment
          and Request for Releasable Materials

Dear Ms. Elbially:

This is in response to your letter, dated February 23, 2016, in which your client, Mr. Mohamed
Ali Al Seraji, authorized the release of "any and all documentation supporting, justifying, and or
authorizing the denial by TSA in making their Initial Determination of Threat Assessment" to you.[1]

Enclosed, please find the information TSA is authorized to release. Pursuant to 49 C.F.R.
§ 1515.5(e), TSA does not disclose classified materials, as defined in Executive Order 12968,
and reserves the right not to disclose any other information or material not warranting disclosure
or protected from disclosure under law.

Pursuant to 49 C.F.R. § 1515.5(b)(5), not later than 60 calendar days after the date of service of
this response, you may serve upon TSA a written reply to the Initial Notification of Threat
Assessment. This written reply should include any information that you believe TSA should
consider in reviewing the basis for the Initial Notification.

You should serve all documents upon:

               Transportation Security Administration
               Office of Chief Counsel
               Security Threat Assessment Operations
               601 South 12th Street- TSA 2
               Arlington, VA 20598

---

[1] Citing Attorney Elbially's letter, dated February 3, 2016.

Not later than 60 calendar days, or such longer period as TSA may determine for good cause, after TSA receives your reply, TSA will respond.

Sincerely,

Suzette Knight
Attorney Advisor


Enclosure

2

# SENSITIVE SECURITY INFORMATION

## TRANSPORTATION SECURITY ADMINISTRATION
## OFFICE OF LAW ENFORCEMENT AND FEDERAL AIR MARSHAL SERVICE

████████████████████████████████████████████

### REPORT OF INVESTIGATION
### FINAL

**Case Number:**                                      **Period of Investigation:**

████████████████                    ████████████████████████

**Subject of Investigation:**
Name: AL SERAJI, Mohamed Ali
DOB: 25 Jul 1992
SSN: 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
Citizenships: Sudan; Yemen; United States of America (Naturalized)
Program: Transportation Worker Identification Credential (TWIC) Applicant– Brea,
CA Enrollment Center

**Basis of Investigation:**
On ████████████ a security threat investigation was initiated ████████████

████████████████████████████████████████████████████████████ regarding TWIC
applicant, AL SERAJI.

**Summary of Investigation:**
**Program Office:**████████████ the TSA Adjudication Center (ADJC) advised
AL SERAJI has a TWIC application (case 1-3549265847) which was received in the
Technology Infrastructure Modernization (TIM) System on ████████████ and is in Vetting
Initiated status. ████████████ the TWIC Program Management Office (PMO)
advised AL SERAJI submitted a TWIC application on 09 Oct 2015 at the Brea,
California Enrollment Center and is currently in vetting status.

**Office of Intelligence and Analysis:** ████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

**Agency Information:** ████████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.

# SENS  IVE SECURITY INFORMATION



**Systems Check:**

**Investigator Recommendation:** Upon review and analysis of the information contained in regard to this investigation, Investigator  recommends AL SERAJI's TWIC application be Denied.

**Report Prepared by:**

**Date**

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.

## SENSITIVE SECURITY INFORMATION

**Conclusion:**

Upon review of all information obtained during the investigation, the Office of Law Enforcement and Federal Air Marshal Service (OLE/FAMS) determined AL SERAJI's TWIC application should be:

X   Denied

**Approved for Action:**                    **Date:**

*WARNING:* This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.

**Bard, Jason**

| | |
|---|---|
| **From:** | ████████ |
| **Sent:** | Tuesday, October 13, 2015 9:52 AM |
| **To:** | ████████ |
| **Cc:** | ████████ |
| **Subject:** | RE: Preliminary TWE - 20151009 - MAAS |
| **Attachments:** | AL SERAJI.M.10.13.2015.docx |

Attached it's the PMO info for the SM as requested.

Regards

████████

*Lead Transportation Security Specialist*
*Transportation Worker Identification Credentialing (TWIC) PMO*
*Office of Intelligence and Analysis (OIA)*
*Transportation Security Administration (TSA)*

████████

**From:** ████████
**Sent:** Tuesday, October 13, 2015 7:12 AM
**To:** ████████
**Cc:** ████████
**Subject:** FW: Preliminary TWE - 20151009 - MAAS

Good morning,

Could you please provide any available information in the attached document.

Thanks,

████████

Transportation Security Administration
Office of Law Enforcement / Federal Air Marshal Service

████████

**From:** OIA.VET
**Sent:** Friday, October 09, 2015 6:03 PM
**To:** ████████

1

SENSITIVE SECURITY INFORMATION (SSI)
PERSONALLY IDENTIFIABLE INFORMATION (PII)
SENSITIVE PERSONALLY IDENTIFIABLE INFORMATION (SPII)
LAW ENFORCEMENT SENSITIVE

TWC (TWIC Employees)

**Subject Data Details (TWE):**

| | |
|---|---|
| Last Name: | AL SERAJI |
| First Name: | MOHAMED ALI |
| Citizenship: | USA (UNITED STATES) |
| Nationality: | YEM (YEMEN) |
| DOB: | 1992-07-25 |
| POB: | SANAA, YEM |
| SSN: | 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 |
| Gender: | M |
| PP: | 517402117 USA |
| Address: | 10070 GILBERT ST APT 62, ANAHEIM, CA, 92804-5246, USA |
| | 168 N MULLER ST UNIT 103, ANAHEIM, CA, 92801-8818, USA |
| | UBER |

Employer:

**TWIC PMO**

TW enrolled 10/9/2015 at the Brea, CA location.

Transportation Security Specialist
U.S. Department of Homeland Security
Transportation Security Administration
Office of Intelligence and Analysis Vetting Operations Division
Transportation Security Vetting Branch (TSVB)
Colorado Springs, CO, 80903

WARNING: This record contains Sensitive Security Information that is controlled under 49 CFR parts 15 and 1520. No part of this record may be disclosed to persons without a "need to know", as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. For U.S. government agencies, public disclosure is governed by 5 U.S.C. 552 and 49 CFR parts 15 and 1520.

# EXHIBIT G

**CLCMA**

clcma.org

CONSTITUTIONAL LAW CENTER
*for* MUSLIMS *in* AMERICA

T 972.914.2507
F 972.692.7454

833 E. Arapaho Road
Suite 102
Richardson, TX 75081

Suzette Knight                                                    March 24, 2016
Transportation Security Administration
Office of Chief Counsel
Security Threat Assessment Operation
601 South 12th St., TSA 2
Arlington, VA, 20598

Re: Mr. Mohamed Ali Al Seraji:
<u>Response to TSA's response to the Appeal of Initial Determination of Threat Assessment</u>

Dear Ms. Knight:

This is in response to your letter, dated March 10, 2016, in which you enclosed the materials utilized by the Transportation Security Administration (TSA) to deny my client, Mr. Mohamed Ali Al Seraji, a TWIC card.

The materials enclosed were heavily redacted and do not contain any meaningful information other than one known fact, which is that my client's request for a TWIC card was denied. We are aware of the TSA's position that the redactions in the materials can be justified by §1515.5(e), which allows the TSA to withhold "classified materials", as defined in Executive Order 13526. <u>Exec. Order No. 13526</u>, 75 FR 707, 707 (Dec. 29, 2009). However, the TSA has failed to specify why the redacted information can be qualified as "classified materials".

Executive Order 13526 specifically states that information may be originally classified **only if** all of the following conditions are met:(1) an original classification authority is classifying the information;(2) the information is owned by, produced by or for, or is under the control of the United States Government;(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and (4) the original classification authority determines that the unauthorized disclosure of the information **reasonably** could be expected to result in damage to national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage. <u>Id.</u>, sec 1.1 (a). Section 1.4 of this order provides that "[i]nformation shall not be considered for classification unless its unauthorized disclosure could **reasonably** be expected to cause **identifiable or describable** damage to the national security." <u>Id.</u>, sec 1.4. Here, TSA has failed to point out which category the redacted information falls into under section 1.4 of the Executive Order, and it has also failed to reasonably identify or describe any damage that may occur as a result of releasing the redacted information. Thus, the heavy redactions made by the TSA cannot be fully justified under the law.

We respectfully disagree with TSA's denial of Mr. Al Seraji's TWIC card, and we now appeal such decision a second time. Specifically, we request that 1) TSA return all releasable materials, without unreasonable redactions, so that my client is able to address the grounds of the TSA's denial; and 2) if the TSA maintains that the heavy redactions are applicable, then we are entitled to a reasonable explanation as to why TSA believes that the redacted information can be qualified as "classified material" under Executive Order 13526.

Sincerely,

**Marwa Elbially, Esq.**
Attorney for Mohamed Al Seraji
Constitutional Law Center for Muslims in America

# EXHIBIT H

U.S. Department of Homeland Security
Arlington, Virginia 20598



**Transportation
Security
Administration**

**By Certified U.S. Mail – Return Receipt Requested**



April 14, 2016

Ms. Marwa Elbially
Constitutional Law Center for Muslims in America
833 E. Arapaho Road, Suite 102
Richardson, TX 75081

Re:   Mr. Mohamed Ali Al Seraji – Appeal of Initial Determination of Threat Assessment
and Request for Releasable Materials

Dear Ms. Elbially:

We are in receipt of your letter, dated March 24, 2016, in which you claimed that TSA failed to
specify why the redacted releasable information it provided you on March 10, 2016, (hereinafter
redacted information) was classified material.  You claimed that TSA failed to point out which
category under Executive Order No. 13526, section 1.4 the redacted information fell under, and
failed to reasonably identify or describe any damage that would occur as a result of releasing the
redacted information.  You requested that: (1) TSA return all releasable materials, without
unreasonable redactions, or (2) TSA provide an explanation why TSA believes that the redacted
information is "classified material" under Executive Order No. 13526.

First, TSA has provided you with whatever information it is authorized to disclose.  Title 49,
Code of Federal Regulations (C.F.R.), section 1515.5(e) states, "[i]n connection with the
procedures under this section, TSA does not disclose classified materials, as defined in Executive
Order 12968, and reserves the right not to disclose any other information or material not
warranting disclosure or protected from disclosure under law."  This provision contemplates
TSA's use of classified or otherwise protected information in its decisions and the non-sharing of
the same with an applicant.  To the extent you have assumed that the redacted information is
classified, TSA wishes to clarify that 49 C.F.R. § 1515.5(e) applies to both classified and
otherwise protected information, such as sensitive security information.  *See* 49 C.F.R. § 1520.5.

Second, TSA is unaware of any legal authority that requires it in this proceeding to (1) specify
why the redacted information is classified; (2) establish which category under Executive Order
No. 13526, section 1.4 the redacted information falls under; or (3) identify or describe the
damage that would occur as a result of releasing the redacted information.  Nor have you
identified any such authority in your letter.

1

Third, it is well established that an agency can use classified information in making a determination without sharing it with the opposing party. *See Latif v. Holder*, 2016 U.S. Dist. LEXIS 40177, *44 (noting that procedural due process does not require an agency to disclose classified information to the opposing party); *see also Al-Haramain Islamic Foundation v. U.S. Dept. of Treasury*, 686 F.3d 965, 982 (9th Cir. 2012)(holding that the government may use classified information, without disclosure, when making designation determinations); *Nat'l Council of Resistance of Iran v. Dep't of State (NCORI)*, 251 F.3d 192, 208-09 (D.C. Cir. 2001) (holding that, in a designation of a "foreign terrorist organization" under the Antiterrorism and Effective Death Penalty Act of 1996, the government's use of classified information without permitting the organization to view the information did not violate the organization's due process rights); *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1241-43 (D.C. Cir. 2003) (following *NCORI* and describing in detail its holding on this point); *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (holding that, in a military criminal trial, the government's use of classified information, without permitting the defendant or his lawyers to view the information, did not violate the defendant's due process rights); *cf. Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) (en banc) (affirming the district court's dismissal of an action because of the state secrets doctrine in a case involving classified information), *cert, denied*, 131 S. Ct. 2442, 179 L. Ed. 2d 1235 (2011).

Based on the forgoing, TSA has no obligation to and does not intend to comply with any of your requests.

Please be reminded that no later than 60-calendar days after the date of service of TSA's letter to you, dated March 10, 2016, you may serve upon TSA an additional written reply to the Initial Notification of Threat Assessment.

Sincerely,

Suzette Knight
Attorney Advisor

2

# EXHIBIT I



**CONSTITUTIONAL LAW CENTER**
*for MUSLIMS in AMERICA*

T 972.914.2507
F 972.692.7454
833 E. Arapaho Road
Suite 102
Richardson, TX 75081

clcma.org

Suzette Knight                                          April 20, 2016
Transportation Security Administration
Office of Chief Counsel
Security Threat Assessment Operation
601 South 12th St., TSA 2
Arlington, VA 20598

Re: **Mr. Mohamed Ali Al Seraji**

Dear Ms. Knight:

 We are in receipt of your letter, dated April 14, 2016, stating that in no later than 60 calendar days after the date of service of your letter dated March 10, 2016 we may serve "an additional written reply to the Initial Notification of Threat Assessment."

 We have already appealed the Initial Notification of Threat Assessment. Twice, actually. First, on February 3, 2016 and the second time on March 24, 2016. (*See* Attachments #1 and #2.)

 According to 49 C.F.R. § 1515.5 (5), TSA shall respond within 60 days after an applicant's reply to TSA's Initial Determination of Threat Assessment, and TSA shall serve a Final Determination of Threat Assessment or a Withdrawal of the Initial Determination with its response. If by chance you do not consider the letter of March 10, 2016 to be a final determination, then please issue such a final determination.

 If the letter of March 10, 2016 is considered by your office to be a final determination under 49 C.F.R. § 1515.5 (5), we hereby consider our client to have exhausted his administrative remedies fully.

 As always, we are glad to communicate with you should it be necessary.  You may reach our office at the contact information listed above.

Sincerely,

Enclosures/Attachments 1 & 2

**Marwa Elbially, Esq.**
Attorney for Mohamed Al Seraji
Constitutional Law Center for Muslims in America



CONSTITUTIONAL LAW CENTER
*for* MUSLIMS *in* AMERICA

**CLCMA**

**T** 972.914.2507
**F** 972.692.7454
833 E. Arapaho Road
Suite 102
Richardson, TX 75081

clcma.org

*Via Fedex: Signature Required*

Robert G. Seasonwein                                    February 3, 2016
Assistant Chief Counsel
Security Threat Assessment Operations
TSA Headquarters
12th Floor, TSA-2
601 South 12th Street
Arlington, VA 20598

Re:  Mohammed Ali Al Seraji:
Appeal of Initial Determination of Threat Assessment
And Request for Releasable Documents

Dear Mr. Seasonwein:

I am writing to you on behalf of our client, Mohamed Ali Al Seraji. Mr. Al Seraji received an Initial Determination of Threat Assessment letter from the Transportation Security Administration (TSA) dated December 8, 2015, stating that Mr. Al Seraji **"may not** be eligible to hold a Transportation Worker Identification Credential (TWIC)."

Your stated basis for this determination was 49 CFR 1572.107(a), which states in part that "TSA may determine that an applicant poses a security threat based on a search of the following databases: (1) Interpol and other international databases, as appropriate. (2) Terrorist watchlists and related databases. (3) Any other databases relevant to determining whether an applicant poses, or is suspected of posing, a security threat, or that confirm an applicant's identity." Your Initial Assessment does not specify which section(s) the TSA used for its initial determination.

Request for Releasable Documents

In accordance with 49 CFR 1515.5(b)(2), Mr. Al Seraji requests any and all, documentation supporting, justifying, and or authorizing the denial by the TSA in making their Initial Determination of Threat Assessment.  We would request all notes or memoranda from the TSA files utilized by them in this initial denial and an explanation of when, why, and how the decisions were made to deny Mr. Al Seraji his TWIC credential. We further request any documentation of any communication between the TSA, FBI, Department of Homeland Security, NSA or the United States Attorney's Office regarding said denial. Documentation as used in these requests includes all paper, notes, payment records, reports, memoranda, emails and

1

references in whatever form, paper, electronic, or otherwise and wherever located or maintained within the government, including any personal or private files, whether maintained in government offices or elsewhere.

<u>Appeal of Initial Determination of Threat Assessment</u>

While it is difficult to specifically respond to a generic initial denial, which is the reason for our request for further documentation, it is clear that Mr. Al Seraji does not pose a security threat to this country. Mr. Al Seraji is a 23 year old American citizen with no criminal history or prior arrests. At the age of 13, Mr. Al Seraji immigrated to the United States from Yemen to join his father, who had been residing in the United States for 10 years. When Mr. Al Seraji turned 18, he dropped out of the local high school and enrolled in a local community college. For three semesters, Mr. Al Seraji attended community college.

When Mr. Al Seraji's father passed away in February 2014, Mr. Al Seraji became the primary caretaker of his mother and three younger siblings. After working as an Uber driver for a period of time, Mr. Al Seraji decided he needed to increase his income and he enrolled in a Tractor Trailer Driver Training course with the Toro School of Truck Driving and obtained his certificate. (*See* Attachment #1.) After completing the course, Mr. Al Seraji obtained his Commercial Driver's License. (*See* Attachment #2)  Emarat Shipping, Inc. offered Mr. Al Seraji a truck driver job on the condition that he obtain a TWIC card.  Mr. Al Seraji is currently unemployed as he has been unable to obtain his TWIC card.

As Mr. Al Seraji clearly does not pose a security threat, Mr. Al Seraji respectfully requests that the initial determination be withdrawn per 49 CFR 1515.9(d). If the initial determination is not withdrawn, Mr. Al Seraji will await the release of documents providing a basis for this determination and will file an appeal within "60 days after the date of service of TSA's response." 49 CFR 1515.5(b)(5)(i)

Thank you for your time and consideration.

Sincerely,

Enclosures/Attachments 1 & 2                    **Marwa Elbially, Esq.**
                                                Attorney for Mohamed Al Seraji
                                                Constitutional Law Center for Muslims in America

CONSTITUTIONAL LAW CENTER
for MUSLIMS in AMERICA

**CLCMA**

clcma.org

T 972.914.2507
F 972.692.7454
833 E. Arapaho Road
Suite 102
Richardson, TX 75081

Suzette Knight                                                       March 24, 2016
Transportation Security Administration
Office of Chief Counsel
Security Threat Assessment Operation
601 South 12th St., TSA 2
Arlington, VA, 20598

Re: Mr. Mohamed Ali Al Seraji:
<u>Response to TSA's response to the Appeal of Initial Determination of Threat Assessment</u>

Dear Ms. Knight:

This is in response to your letter, dated March 10, 2016, in which you enclosed the materials utilized by the Transportation Security Administration (TSA) to deny my client, Mr. Mohamed Ali Al Seraji, a TWIC card.

The materials enclosed were heavily redacted and do not contain any meaningful information other than one known fact, which is that my client's request for a TWIC card was denied. We are aware of the TSA's position that the redactions in the materials can be justified by §1515.5(e), which allows the TSA to withhold "classified materials", as defined in Executive Order 13526. <u>Exec. Order No. 13526</u>, 75 FR 707, 707 (Dec. 29, 2009). However, the TSA has failed to specify why the redacted information can be qualified as "classified materials".

Executive Order 13526 specifically states that information may be originally classified **only if** all of the following conditions are met:(1) an original classification authority is classifying the information;(2) the information is owned by, produced by or for, or is under the control of the United States Government;(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and (4) the original classification authority determines that the unauthorized disclosure of the information **reasonably** could be expected to result in damage to national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage. <u>Id.</u>, sec 1.1 (a). Section 1.4 of this order provides that "[i]nformation shall not be considered for classification unless its unauthorized disclosure could **reasonably** be expected to cause **identifiable or describable** damage to the national security." <u>Id.</u>, sec 1.4. Here, TSA has failed to point out which category the redacted information falls into under section 1.4 of the Executive Order, and it has also failed to reasonably identify or describe any damage that may occur as a result of releasing the redacted information. Thus, the heavy redactions made by the TSA cannot be fully justified under the law.

We respectfully disagree with TSA's denial of Mr. Al Seraji's TWIC card, and we now appeal such decision a second time. Specifically, we request that 1) TSA return all releasable materials, without unreasonable redactions, so that my client is able to address the grounds of the TSA's denial; and 2) if the TSA maintains that the heavy redactions are applicable, then we are entitled to a reasonable explanation as to why TSA believes that the redacted information can be qualified as "classified material" under Executive Order 13526.

Sincerely,

**Marwa Elbially, Esq.**
Attorney for Mohamed Al Seraji
Constitutional Law Center for Muslims in America

# EXHIBIT J



CONSTITUTIONAL LAW CENTER
for MUSLIMS in AMERICA

clcma.org

T 972.914.2507
F 972.692.7454
833 E. Arapaho Road
Suite 102
Richardson, TX 75081

Transportation Security Administration
TSA-20, East Tower
FOIA Branch
601 South 12th Street
Arlington, VA 20598-6020

May 18, 2016

## FREEDOM OF INFORMATION REQUEST

To Whom It May Concern,

I am writing to request disclosure of any records that were prepared, received, transmitted, collected and/or maintained by Transportation Security Administration relating to my client, **Mohamed Ali Al Seraji.**

Enclosed is form DOJ-361 completed by Mohamed Ali Al Seraji.

If this request is denied in whole or in part, I request that you justify all deletions by reference to specific exemptions of the FOIA. Please provide all segregable portions of otherwise exempt material. I reserve the right to appeal a decision to withhold any information.

Please send all records, as they become available, to this address:

CLCMA
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081

Thank you for your assistance.

Sincerely,

Marwa Elbially, Esq.



Transportation
Security
Administration

U.S. Department of Homeland Security
Freedom of Information Act Branch
601 South 12ᵗʰ Street, TSA-20
Arlington, VA 20598-6020

## AFFIRMATION/DECLARATION

This is to affirm that

I, **Mohamed Ali Al Seraji**
(PRINT FULL NAME)

request access to records maintained by the Transportation Security Administration which pertain to me.

My present address is:
**163 N. Muller St., Unit 108   Anaheim, CA 92801**

my date of birth is: **7/25/1992**, and

my place of birth was: **Yemen**; and

my citizenship status[1] is **US Citizen**.

I understand that any knowingly or willfully seeking or obtaining access to records about another person under false pretenses is punishable by a fine of up to $5,000. I also understand that any applicable fees must be paid by me.

I hereby authorize **Constitutional Law Center for Muslims in America** access to my records.
(PRINT FULL NAME)

I request that any located and disclosable records be forwarded to the following individual:

**Marwa Elbially, Esq.** at the following address:
(PRINT FULL NAME)
**833 E Arapaho Rd, Ste 102   Richardson, TX 75081**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Executed on **5/11/2016**.
(DATE)

_____
(SIGNATURE OF AFFIRMANT/DECLARANT)

PRIVACY ACT STATEMENT: AUTHORITY: 49 U.S.C. § 114; 5 U.S.C. 552a. PRINCIPAL PURPOSE(S): This information will be used to verify your identify for purposes of processing your request under the Privacy Act, or for records requested during litigation or enforcement action involving TSA. ROUTINE USE(S): This information may be shared pursuant to routine uses identified in the following DHS and TSA system of records, DHS/ALL 001 Freedom of Information Act and Privacy Act Record System, DHS/TSA 001, Transportation Security Enforcement Records System, DHS/TSA 002 Transportation Security Threat Assessment System, and DHS/TSA 009 General Legal Records. DISCLOSURE: Voluntary; failure to furnish the requested information may result in no action being taken on your request. PLEASE RETURN TO: U.S. Department of Homeland Security, Transportation Security Administration, FOIA Office, TSA-20, 601 S. 12ᵗʰ Street, East Building, Arlington, VA 20598-6020 or Via Facsimile: 571-227-1406.

---

[1] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

# EXHIBIT K

(2)

U.S. Department of Homeland Security
Transportation Security Administration
Freedom of Information Act Branch
601 S. 12th Street
Arlington, VA 20598-6020



**Transportation
Security
Administration**

05/19/2016

---

## Freedom of Information Act/Privacy Act Request Acknowledgement

| Requester Name and Address: | Request Date: May 18, 2016 |
|---|---|
| Marwa Elbially, Esq. | Date Received: May 19, 2016 |
| Project Resource Attorney | Unperfected Case Number: 2016-0155 |
| Constitutional Law Center for Muslims | Fee Waiver Requested: NO    Expedite Requested: NO |
| in America | |
| (CLCMA) | |

Marwa Elbially,

Your request has been received in this office for processing. Please see below to learn if we need additional clarification and/or documentation in order to continue processing your request. If the first box is checked, nothing more is required from you. If other boxes are checked and we do require supplemental information, you have 30 calendar days to respond. If you do not respond within 30 days, we will administratively close your case; however, you may resubmit your request at any time. If you have any questions, please contact this office at (571) 227-2300 or foia@tsa.dhs.gov.

☐ No additional information is needed; we entered your request in our processing queue.

☐ Because you have asked for copies of records about yourself, we must verify your identity to ensure that your personal information is released only to you. Enclosed is the appropriate form that can be used to satisfy this requirement.

☐ Because you have submitted a third party request, we must receive a statement from the subject of the request verifying his/her identity and certifying his/her agreement that records concerning him/her may be released to you. Enclosed is the appropriate form that can be used to satisfy this requirement.

☑ We determined your request is too broad in scope or does not specifically identify the records you seek. You must describe the records with as much information as possible to enable us to locate them, if they exist, with a reasonable amount of effort.

☐ Your request for expedited processing is denied because you do not qualify under one of the two required categories: 1) Circumstances in which the lack of expedited treatment could pose an imminent threat to life or physical safetly, or 2) A particular urgency existed to inform the public about government activity beyond the public's right to know.

☐ Please be advised that the FOIA does not require federal agencies to answer questions or create records in response to a FOIA request. Please modify your request ensuring you specifically describe the records you seek.

# EXHIBIT L

CONSTITUTIONAL LAW CENTER
for MUSLIMS in AMERICA

**CLCMA**

clcma.org

T 972.914.2507
F 972.692.7454
833 E. Arapaho Road
Suite 102
Richardson, TX 75081

Transportation Security Administration
TSA-20, East Tower
FOIA Branch
601 South 12th Street
Arlington, VA 20598-6020

May 19, 2016

### REVISED FREEDOM OF INFORMATION REQUEST

To Whom It May Concern,

In response to the denial of my first Freedom of Information Act request (Unperfected Case Number 2016-0155), I am limiting the scope of the request. I am writing to request disclosure of any records that were prepared, received, transmitted, collected and/or maintained by Transportation Security Administration for the time period of January, 2011 - Present relating to my client, **Mohamed Ali Al Seraji.**

Enclosed is form DOJ-361 completed by Mohamed Ali Al Seraji.

If this request is denied in whole or in part, I request that you justify all deletions by reference to specific exemptions of the FOIA. Please provide all segregable portions of otherwise exempt material. I reserve the right to appeal a decision to withhold any information.

Please send all records, as they become available, to this address:

CLCMA
833 E. Arapaho Rd
Richardson, TX 75081

Thank you for your assistance.

Sincerely,

Marwa Elbially, Esq.
Constitutional Law Center for Muslims in America
(CLCMA)



**Transportation**
**Security**
**Administration**

U.S. Department of Homeland Security
Freedom of Information Act Branch
601 South 12th Street, TSA-20
Arlington, VA 20598-6020

## AFFIRMATION/DECLARATION

This is to affirm that

I, __Mohamed Ali Al Seraji__
(PRINT FULL NAME)

request access to records maintained by the Transportation Security Administration which pertain to me.

My present address is:

__165 N. Muller St, Unit 105   Anaheim, CA 92801__

my date of birth is: __7/25/1992__, and

my place of birth was: __Yemen__, and

my citizenship status¹ is __U.S. Citizen__

I understand that any knowingly or willfully seeking or obtaining access to records about another person under false pretenses is punishable by a fine of up to $5,000. I also understand that any applicable fees must be paid by me.

I hereby authorize __Constitutional Law Center for Muslims in America__ access to my records.
(PRINT FULL NAME)

I request that any located and disclosable records be forwarded to the following individual:

__Marwa Elbially, Esq__ at the following address:
(PRINT FULL NAME)

__833 E Arapaho Rd, Ste 102   Richardson, TX 75081__

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Executed on __5/11/2016__
(DATE)

_____
(SIGNATURE OF AFFIRMANT/DECLARANT)

PRIVACY ACT STATEMENT: AUTHORITY: 49 U.S.C. § 114; 5 U.S.C. 552a. PRINCIPAL PURPOSE(S): This information will be used to verify your identify for purposes of processing your request under the Privacy Act, or for records requested during litigation or enforcement action involving TSA. ROUTINE USE(S): This information may be shared pursuant to routine uses identified in the following DHS and TSA system of records, DHS/ALL 001 Freedom of Information Act and Privacy Act Record System, DHS/TSA 001, Transportation Security Enforcement Records System, DHS/TSA 002 Transportation Security Threat Assessment System, and DHS/TSA 009 General Legal Records. DISCLOSURE: Voluntary; failure to furnish the requested information may result in no action being taken on your request. PLEASE RETURN TO: U.S. Department of Homeland Security, Transportation Security Administration, FOIA Office, TSA-20, 601 S. 12th Street, East Building, Arlington, VA 20598-6020 or Via Facsimile: 571-227-1406.

---

¹ Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

# EXHIBIT M

U.S. Department of Homeland Security
Transportation Security Administration
Freedom of Information Act Branch
601 S. 12th Street
Arlington, VA 20598-6020



Transportation
Security
Administration

**5/20/2016**

### Freedom of Information Act/Privacy Act Request Acknowledgement

| **Requester Name and Address:**<br>Marwa Elbially, Esq.<br>Project Resource Attorney<br>Constitutional Law Center for Muslims<br>in America<br>(CLCMA) | **Request Date:** May 19, 2016<br>**Date Received:** May 20, 2016<br>**Unperfected Case Number: 2016-0157**<br>**Fee Waiver Requested: NO   Expedite Requested: NO** |
|---|---|

Marwa Elbially,

Your request has been received in this office for processing. Please see below to learn if we need additional clarification and/or documentation in order to continue processing your request. If the first box is checked, nothing more is required from you. If other boxes are checked and we do require supplemental information, you have 30 calendar days to respond. If you do not respond within 30 days, we will administratively close your case; however, you may resubmit your request at any time. If you have any questions, please contact this office at (571) 227-2300 or foia@tsa.dhs.gov.

☐ No additional information is needed; we entered your request in our processing queue.

☐ Because you have asked for copies of records about yourself, we must verify your identity to ensure that your personal information is released only to you. Enclosed is the appropriate form that can be used to satisfy this requirement.

☐ Because you have submitted a third party request, we must receive a statement from the subject of the request verifying his/her identity and certifying his/her agreement that records concerning him/her may be released to you. Enclosed is the appropriate form that can be used to satisfy this requirement.

☑ We determined your request is too broad in scope or does not specifically identify the records you seek. You must describe the records with as much information as possible to enable us to locate them, if they exist, with a reasonable amount of effort.

☐ Your request for expedited processing is denied because you do not qualify under one of the two required categories: 1) Circumstances in which the lack of expedited treatment could pose an imminent threat to life or physical safety, or 2) A particular urgency existed to inform the public about government activity beyond the public's right to know.

☐ Please be advised that the FOIA does not require federal agencies to answer questions or create records in response to a FOIA request. Please modify your request ensuring you specifically describe the records you seek.

# EXHIBIT N



**CLCMA**

**CONSTITUTIONAL LAW CENTER**
*for MUSLIMS in AMERICA*

clcma.org

T 972.914.2507
F 972.692.7454
833 E. Arapaho Road
Suite 102
Richardson, TX 75081

Transportation Security Administration
TSA-20, East Tower
FOIA Branch
601 South 12th Street
Arlington, VA 20598-6020

June 24, 2016

### RE: FREEDOM OF INFORMATION REQUEST & PRIVACY ACT REQUEST

To Whom It May Concern,

I am writing to request disclosure of records that were prepared, received, transmitted, collected and/or maintained by Transportation Security Administration relating to my client, **Mohamed Ali Al Seraji's** application for Transportation Worker Identification Credential (TWIC Card).

Recently Mr. Seraji's application for a TWIC card was denied by the TSA, and I request that you provide existing documents, writings, photographs, videos, sound recordings, drawings, computerized records, electronic mail, agency policies and procedures, executive decisions, or any other material or information that can be retrieved and duplicated regarding to my client's TWIC Card application and denial of it.

Besides, I am also writing this letter to submit a Privacy Act Request to review any records that TSA has on Mr. Seraji. We believe there are such records because Mr. Seraji has been interviewed by both TSA and FBI regarding his TWIC card application and then received denial letters on security grounds.

Form DOJ-361 completed by Mr. Seraji is attached with this letter.

If this request is denied in whole or in part, I request that you justify all deletions by reference to specific exemptions of the FOIA. Please provide all segregable portions of otherwise exempt material. I reserve the right to appeal a decision to withhold any information.

Please send all records, as they become available, to the address in the letterhead.

Sincerely,

Marwa Elbially, Esq.



**Transportation
Security
Administration**

Department of Homeland Security
Freedom of Information Act Branch
601 South 12th Street, TSA-20
Arlington, VA 20598-6020

## AFFIRMATION/DECLARATION

This is to affirm that

I, __Mohamed Ali Al Seraji__,
(PRINT FULL NAME)

request access to records maintained by the Transportation Security Administration which pertain to me.

My present address is:
__168 N. Muller St., Unit 108   Anaheim, CA  92801__

my date of birth is: __7/25/1992__, and

my place of birth was: __Yemen__, and

my citizenship status[1] is __US Citizen__.

I understand that any knowingly or willfully seeking or obtaining access to records about another person under false pretenses is punishable by a fine of up to $5,000. I also understand that any applicable fees must be paid by me.

I hereby authorize __Constitutional Law Center for Muslims in America__ access to my records.
(PRINT FULL NAME)

I request that any located and disclosable records be forwarded to the following individual:

__Marwa Elbially, Esq.__ at the following address:
(PRINT FULL NAME)
__833 E Arapaho Rd., Ste 102   Richardson, TX 75081__

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Executed on __5/11/2016__
(DATE)

_____
(SIGNATURE OF AFFIRMANT/DECLARANT)

**PRIVACY ACT STATEMENT: AUTHORITY: 49 U.S.C. § 114; 5 U.S.C. 552a. PRINCIPAL PURPOSE(S):** This information will be used to verify your identity for purposes of processing your request under the Privacy Act, or for records requested during litigation or enforcement action involving TSA. **ROUTINE USE(S):** This information may be shared pursuant to routine uses identified in the following DHS and TSA system of records, DHS/ALL 001 Freedom of Information Act and Privacy Act Record System, DHS/TSA 001, Transportation Security Enforcement Records System, DHS/TSA 002 Transportation Security Threat Assessment System, and DHS/TSA 009 General Legal Records. **DISCLOSURE:** Voluntary; failure to furnish the requested information may result in no action being taken on your request. **PLEASE RETURN TO: U.S. Department of Homeland Security, Transportation Security Administration, FOIA Office, TSA-20, 601 S. 12th Street, East Building, Arlington, VA 20598-6020 or Via Facsimile: 571-227-1406.**

---

[1] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

## Certification of Identity

**Privacy Act Statement**. In accordance with 6 CFR Section 5.21(d), personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Homeland Security systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(I)(3).

Full Name of Requester[1]     Mohammed Ali Al Seraji

Current Address     168 N Muller St Unt 103   Anaheim, CA 92801

Date of Birth     7/25/1992          Place of Birth     ~~Sanaa~~ Yemen

Last Four Digits of Social Security Number[2] (optional)     _____

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(I)(3) by a fine of not more than $5000.

Signature[3]     _Mohammed_          Date  2-18-2016

**Optional: Authorization to Release Information to Another Person (or organization)**
(This portion is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person or organization.)

Further, pursuant to 5 U.S.C. Section 552a(b) and 6 CFR Section 5.21(f), I authorize the U.S. Department of Homeland Security to release any and all information relating to me to:

Wesam Marine Elhady Eq   Constitutional Law Center for Muslims in America
_____
Print or Type Name (and Organization, if applicable)

_____

1.  Name of individual who is the subject of the record sought.
2.  Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
3.  Signature of individual who is the subject of the record sought.

**Declaration**

I, the undersigned, am the plaintiff in this cause of action. I attest that to the best of my knowledge all information contained herein is true and correct.

I sign on this the 3rd day of September, 2016.

Mohamed Al Seraji