| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |
|---|---|

**CIVIL MINUTES – GENERAL**

| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
|---|---|
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

    Not Present                            Not Present

**PROCEEDINGS:** (IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART FOR FAILURE TO EXHAUST AND GRANTING DEFENDANTS' MOTION TO DISMISS IN PART FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. 40)

    Before the Court is a Motion to Dismiss filed by Defendants Huban A. Gowadia, Acting Director of the Transportation Security Administration; John F. Kelly, Secretary of the Department of Homeland Security; James Comey, Director of the Federal Bureau of Investigation; Charles H. Kable, Acting Director of the Terrorist Screening Center; and Jefferson B. Sessions III, United States Attorney General (collectively, the "Official Capacity Defendants"). (Mot., Doc. 40.) Plaintiff Mohamed Al Seraji has submitted an Opposition (Opp'n, Doc. 43), and the Official Capacity Defendants have submitted a Reply (Reply, Doc. 49). For the following reasons, the Court GRANTS the Motion to Dismiss.

## I.     BACKGROUND

    As this is a motion to dismiss, the Court accepts all factual allegations in Plaintiff's Second Amended Complaint as true and draws all reasonable inferences in his favor. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

    Plaintiff Mohamed Al Seraji is a naturalized United States citizen who immigrated to America from Yemen as a thirteen-year-old boy. (SAC ¶¶ 5, 13, Doc. 36.) To support

| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |
|---|---|

**CIVIL MINUTES – GENERAL**

| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
|---|---|
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

his family while he was in college, Al Seraji worked as an Uber driver, but he had to drop out of college to look for full-time employment. (*Id.* ¶ 14.) On September 9, 2015, Al Seraji successfully completed the Federal Motor Entry Level Class A Professional Tractor Trailer Driver Training Course at the Toro School of Truck Driving. (*Id.*; Certificate, Exh. A, Doc. 36-1.) A few weeks later, on September 29, 2015, Al Seraji received a California Commercial Driver's License. (SAC ¶ 14.) After obtaining the license, Al Seraji secured an offer of employment with Emarat Shipping Inc.[1] that was conditioned on Al Seraji obtaining a Transportation Worker Identification Credential ("TWIC") from the Transportation Security Administration ("TSA"). (SAC ¶ 15; Employment Offer, Exh. C, Doc. 36-1.)

      After submitting his TWIC application, Al Seraji received a voicemail on October 30, 2015 from Wesley Williams, a TSA employee, informing Al Seraji that he needed to come in for an interview. (SAC ¶¶ 16-17.) When he arrived for the interview, Al Seraji was surprised to discover that an FBI agent, Nicholas Vicencia, would be participating in the interview and questioning him. (*Id.* ¶ 18.) Agent Vicencia asked Al Seraji whether he had been sent by anyone in Yemen to work at American ports and whether he was affiliated with a terrorist organization. (*Id.* ¶¶ 19-20.) Al Seraji told the FBI agent that he came to America as a child and had no affiliation with any terrorist organization. (*Id.* ¶¶ 19-20.) When Agent Vicencia followed up by inquiring whether Al Seraji had any friends who were affiliated with a terrorist organization, Al Seraji indicated that he had learned from news reports that someone from his local mosque, Mohanad Badawi, had been arrested. (*Id.* ¶ 20.) Al Seraji indicated that he had only brief conversations with Badawi at the mosque. (*Id.*) Agent Vicencia requested that Al Seraji provide the usernames for all of his social media accounts, which Al Seraji agreed to do, and ended the interview by informing Al Seraji that he would receive a decision regarding his TWIC application shortly. (*Id.* ¶ 21.)

---

      [1] Plaintiff misspells the employer as "Emirat" in his Second Amended Complaint; the exhibit attached to his Second Amended Complaint uses the proper spelling (*i.e.*, "Emarat"). (*Compare* SAC ¶ 15 *with* Employment Offer, Exh. C, Doc. 36-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01637-JLS-JCG                                    Date: April 28, 2017
Title: Mohamed Al Seraji v. Huban A. Gowadia et al.

On December 8, 2015, Al Seraji received a letter from the TSA indicating that he "may not be eligible" for a TWIC. (*Id.* ¶ 22; Initial Determination of Eligibility, Exh. D, Doc. 36-1.) The letter indicated that the basis for the potential denial was 49 C.F.R. § 1572.107(a) (*see id.*), which provides that an applicant may be denied a TWIC if the "TSA . . . determine[s] that an applicant poses a security threat based on a search of" various databases. 49 C.F.R. § 1572.107(a). As a result, Al Seraji was unable to accept the job offer with Emarat Shipping. (*Id.* ¶ 22.)

Shortly after Al Seraji received the letter from the TSA, Agent Vicencia called Al Seraji, informing Al Seraji that he was outside of Al Seraji's home and wished to speak with him. (*Id.* ¶ 23.) Agent Vicencia told Al Seraji that he knew that Al Seraji had been denied a TWIC and that he could assist Al Seraji in obtaining one. (*Id.*) Al Seraji informed Agent Vicencia that he would not speak to Agent Vicencia unless his lawyer, Todd Gallinger, were present. (*Id.*) Later that day, Agent Vicencia called Al Seraji again, telling Al Seraji that Gallinger had not picked up the FBI agent's call and that Al Seraji should find new counsel because Gallinger was a "bad lawyer." (*Id.* ¶ 24.)

Subsequently, Gallinger called Agent Vicencia to schedule a meeting. (*Id.* ¶ 26.) During the call, Agent Vicencia reiterated that the FBI could help Al Seraji obtain a TWIC and that Agent Vicencia wanted to speak with Al Seraji about Badawi. (*Id.*) Al Seraji and Gallinger then met Agent Vicencia, who was accompanied by an armed Anaheim Police Department officer. (*Id.* ¶ 27.) No TSA representative was present at this meeting. (*Id.*) Agent Vicencia questioned Al Seraji about his association with Badawi and pictures Al Seraji had liked on Facebook. (*Id.* ¶¶ 28-31.) Agent Vicencia told Al Seraji that the FBI knew that he was the primary caretaker of his family and that Al Seraji—unlike Badawi—just wanted to take care of his family, so the Bureau wanted to help him obtain a TWIC. (*Id.* ¶ 32.) Agent Vicencia indicated that the FBI would like Al Seraji to be the government's "eyes and ears on the ground" to "stop another San Bernardino from happening." (*Id.* ¶ 33.) In particular, Agent Vicencia indicated that he was interested in obtaining information about certain unnamed individuals. (*Id.*) After Al Seraji informed Agent Vicencia that he would not work as informant, Agent Vicencia terminated the interview and told Al Seraji that he would not receive a TWIC. (*Id.* ¶ 34.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01637-JLS-JCG                                              Date: April 28, 2017
Title: Mohamed Al Seraji v. Huban A. Gowadia et al.

    On February 3, 2016, Al Seraji appealed the TSA's initial denial of his TWIC and requested all releasable information that the TSA had relied on in adjudicating his TWIC application. (*Id.* ¶ 35; Appeal, Exh. E, Doc. 36.) The TSA responded on March 10, 2016 with five pages of heavily redacted information. (SAC ¶ 36; Mar. 10 Response, Exh. 5, Doc. 36-1.) After Al Seraji's counsel sent a letter protesting the extent of the redactions (March 24 Letter, Exh. F, Doc. 36-1), the TSA responded with a letter indicating that the "TSA has provided you with whatever information it is authorized to disclose" and that the TSA had no obligation to disclose any of the additional information Al Seraji sought (April 14 Response, Exh. H, Doc. 36-1). The letter concluded by noting that Al Seraji had sixty days from the date of service of the March 10, 2016 letter to "serve upon TSA an additional written reply to the Initial Notification of Threat Assessment." (*Id.*) Six days later, Al Seraji's counsel sent another letter to the TSA, stating that Al Seraji had "already appealed the Initial Notification of Threat Assessment." (April 20 Letter, Exh. I, Doc. 36-1.) On November 17, 2016, the TSA sent Al Seraji a letter concluding that he was "ineligible to hold a TWIC." (Final Determination, Exh. J, Doc. 36-1.) The letter provided that Al Seraji may appeal the TSA's determination to an administrative law judge within thirty days. (*Id.*) Even though Counsel for the Official Capacity Defendants advised Al Seraji's Counsel of Al Seraji's right to appeal the TSA's decision to an ALJ, Al Seraji chose not to exercise this right because, he contends, an appeal would be "futile." (Letter, Exh. A, Doc. 40-2; SAC ¶ 40.)

    On September 9, 2016, Al Seraji filed suit against the heads of the Department of Homeland Security, Federal Bureau of Investigation, Terrorist Screening Center, and the Department of Justice (the "Official Capacity Defendants") as well Agent Vicencia. (Compl., Doc. 6.) At issue in this Motion are Plaintiffs claims brought under the Fifth Amendment Due Process Clause and the Administrative Procedure Act (APA) against the Official Capacity Defendants. (SAC ¶ 36.) On February 3, 2017, the Official Capacity Defendants filed this Motion to Dismiss. (Mot.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01637-JLS-JCG  Date: April 28, 2017
Title: Mohamed Al Seraji v. Huban A. Gowadia et al.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). When considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "The party asserting [ ] subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Yet, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

### III. DISCUSSION

The Official Capacity Defendants move to dismiss Al Seraji's Second Amended Complaint alleging that (1) this Court does not have jurisdiction, (2) this Court should exercise its discretion to require Al Seraji to exhaust his administrative remedies, (3) the TWIC process does not implicate Al Seraji's liberty or property interests, and (4) his claims are not plausible. (Mem. at 7-25.) For the following reasons, the Court dismisses the freestanding constitutional claims for failure to exhaust administrative remedies and the APA claim for lack of subject matter jurisdiction.

### A. Exhaustion

Exhaustion "is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Even if a statute or regulation does not mandate exhaustion of administrative remedies, a court has discretion to require it. *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990); *see NLRB v. Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO, Local 22*, 391 U.S. 418, 426 (1968) ("The requirement of exhaustion is a matter within the sound discretion of the courts"). Much like the doctrine of constitutional avoidance, the doctrine of exhaustion is grounded in important prudential considerations, such as providing an agency with the opportunity to correct its mistakes before it is haled into court and ensuring that parties do not employ judicial review to weaken an agency's administrative processes. *Madigan*, 503 U.S. at 145.

In determining whether to require a plaintiff to exhaust his administrative remedies, a court should consider whether:

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

>(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983).

A district court has discretion "to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). For instance, a court may dismiss a case on *forum non conveniens* "before considering subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432. Similarly, while the doctrine of prudential exhaustion does not implicate the jurisdiction of this Court, it—like *forum non conveniens*—is a threshold ground that does not require a court to pass judgment on the merits of a plaintiff's complaint. *See McCarthy*, 503 U.S. at 144; *United States*, 709 F.2d at 1248. Accordingly, a court may dismiss a suit for failure to exhaust administrative remedies before determining whether it has subject matter jurisdiction. *Puga v. Chertoff*, 488 F.3d 812, 813 (9th Cir. 2007).

This is a textbook case for turning first to whether a plaintiff should exhaust his administrative remedies. Whether this Court has jurisdiction over Al Seraji's freestanding Fifth Amendment claims depends on whether any of Al Seraji's constitutional claims can be fairly characterized as "broad constitutional challenges," *see, e.g.*, *Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006); *Crist v. Leippe*, 138 F.3d 801, 804 (9th Cir. 1998), as well as the proper scope of *Ibrahim v. Department of Homeland Security*, 538 F.3d 1250 (9th Cir.2008), and *Latif v. Holder*, 686 F.3d 1122 (9th Cir. 2012). The resolution of these jurisdictional questions is made even more difficult by Al Seraji's Second Amended Complaint, which confusingly meshes Al Seraji's challenges together in a single cause of action. By contrast, all three factors identified in *California Care Corporation* favor administrative exhaustion in this case, and the TSA's administrative proceedings may very well help clarify the Court's jurisdictional inquiry. Accordingly,

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01637-JLS-JCG                                Date: April 28, 2017
Title: Mohamed Al Seraji v. Huban A. Gowadia et al.

the Court turns first to whether Al Seraji should be required to exhaust his administrative remedies before seeking judicial review.

### 1. Agency Expertise and Development of the Record

As an initial matter, Al Seraji brought this suit based on two premises that are hardly certain: First, that he has been placed on a "terrorist watchlist" and, second, that the TSA's denial of his TWIC application was due to his placement on the watchlist. (SAC ¶ 45, 85-86, 93-95, 99, 103, 106-09, 117-20, 122-30.) Although Al Seraji's allegations may be sufficiently plausible to survive a motion to dismiss, the TSA's administrative appeals process may clarify TSA's reason for denying Al Seraji's TWIC application. In the administrative appeals process, the "TSA will provide to [Al Seraji] an unclassified summary of classified evidence upon which the denial of the waiver or Final Determination was based." 49 C.F.R. § 1515.11(e)(1). No later than thirty days from the close of the record, the ALJ will issue an unclassified written decision. *Id.* § 1515.11(f)(2). These documents likely will inform a district court's jurisdictional inquiry and will provide a more developed factual record for judicial review, whether a district court or a court of appeals ultimately has jurisdiction. Thus, rather than barreling into Al Seraji's constitutional challenges, the prudent course is to require a more developed factual record.

### 2. Potential for Deliberate Bypass of Agency Processes

Excusing administrative exhaustion will also encourage TWIC applicants to deliberately bypass the appeals process established for Final Determinations of Threat Assessment. Because the TSA's procedures for adjudicating TWIC applications include searching "terrorist watchlists and related databases," 49 C.F.R. § 1572.107(a), any applicant tentatively denied a TWIC as a potential security threat could bring a procedural or substantive due process challenge, alleging that the applicant was denied a TWIC because of his alleged placement on a terrorist watchlist. Allowing such a constitutional challenge before any definitive determination by the TSA that the applicant

| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |
|---|---|

**CIVIL MINUTES – GENERAL**

| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
|---|---|
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

is ineligible to hold a TWIC would be premature. More broadly, *any* TWIC applicant could identify some supposed flaw in the TSA' administrative process and, much like Al Seraji, bring a substantive and procedural due process challenge. Accordingly, excusing administrative exhaustion would seriously disrupt the TSA's administrative processes by encouraging applicants to deliberately bypass the TSA's appeals process.

### 3. Opportunity for the Agency to Correct its Own Mistakes and to Preclude the Need for Judicial Review

Perhaps the most salient reason for requiring administrative exhaustion is that the appeals process provides an opportunity for the agency to remedy its own errors and avoid the unnecessary resolution of constitutional questions. Administrative appeals of Final Determinations of Threat Assessment are adjudicated by administrative law judges who enjoy the protections from removal and discipline provided by 5 U.S.C. § 7521. *See* 49 C.F.R. § 1515.3. In appealing the TSA's Final Determination of Threat Assessment, an applicant may request a hearing, 49 C.F.R. § 1515.11(b)(2), and the TSA has submitted a declaration from the TSA's Deputy Director of Security Threat Assessment Operations in the Office of Intelligence and Analysis representing that, to his knowledge, "an ALJ has never denied an applicant's request for a hearing." (Raico Decl. ¶ 19 n.1, Doc. 40-1.) At the hearing, an applicant may provide "oral testimony, documentary, or demonstrative evidence, submit rebuttal evidence, and conduct cross-examination, as permitted by the ALJ."[2] 49 C.F.R. § 1515.11(e)(2). The ALJ reviews the record—including, on an *ex parte* basis, any classified information—to determine whether substantial evidence supports the TSA's determination. 49 C.F.R. § 1515.11(e)(2), (e)(3).

---

[2] Al Seraji objects to the TSA's refusal to provide applicants with an unclassified summary of the evidence supporting TSA's denial of a TWIC application until the applicant appeals to the ALJ, where an applicant is barred by regulation from submitting new evidence to rebut the TSA's Final Determination of Threat Assessment. *See* 49 C.F.R. § 1515.11(b)(1)(ii). The Court mentions the ALJ appeals process simply to show that the proceedings provide an opportunity for the agency to correct its mistakes, not to comment on its constitutional adequacy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 8:16-cv-01637-JLS-JCG          Date: April 28, 2017
Title: Mohamed Al Seraji v. Huban A. Gowadia et al.

The ALJ must issue a written, unclassified decision within thirty days and may issue a separate classified decision to the TSA. 49 C.F.R. § 1515.11(f)(1), (f)(2). Thus, the process provides an opportunity for the TSA to revisit its determination that Al Seraji poses a security threat.

      Relatedly, the administrative appeals process will likely substantially narrow the number of constitutional questions a reviewing court will have to confront. To provide one example, Al Seraji claims that the assigned ALJ's authority to decide whether to have a hearing deprives him of due process. But this constitutional challenge is as contrived as a law school exam: ALJs have never denied a request for a hearing. (Raico Decl. ¶ 19 n.1.) Thus, in this case, the considerations underlying the doctrine of constitutional avoidance dovetail with those favoring prudential exhaustion.

    **4. Al Seraji's Arguments**

      Al Seraji argues against requiring administrative exhaustion by claiming that TSA's administrative appeals process would be "futile" and the TSA's administrative remedies would be insufficient to address his constitutional claims. (Opp'n at 20-22.) These arguments are without merit. The purpose of administrative exhaustion is not to force Al Seraji to litigate his constitutional claims before an ALJ who obviously has no authority to adjudicate them. Instead, administrative exhaustion provides the TSA with an opportunity to correct any potential mistakes and avoids unnecessary constitutional determinations. If the ALJ were to reverse the TSA's Final Determination of Threat Assessment, there would be no need to consider Al Seraji's constitutional challenges. Even if the ALJ sides with the TSA, the process will likely substantially narrow the number of procedural due process questions a court would have to consider.

      Nor does the five months Al Seraji had to wait for the TSA's Final Determination of Threat Assessment suggest that an administrative appeal would be futile or that he would be irreparably prejudiced if required to exhaust his administrative remedies. (Opp'n at 21.) Such routine delays, though unfortunate, are rather common in bureaucratic decisionmaking. In any event, if Al Seraji exercises his right to an administrative appeal, TSA's regulations require a hearing to be held within sixty days

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

after the ALJ grants the request (unless good cause shown), and the ALJ must issue a written decision within "30 calendar days from the close of the record." 49 C.F.R. §§ 1515.11(e), (f)(2); *see also* 49 C.F.R. § 1515.11(f)(1) (defining the close of the record as when the "certified transcript and all documents and materials have been submitted for the record").

At oral argument, Al Seraji raised one last possible reason why an administrative appeal may be "futile": He chose not to file an appeal within the thirty-day deadline. 49 C.F.R. § 1515.11(b). (Tr. 42:10-13.) This, however, is manufactured futility. Counsel for the Official Capacity Defendants sent Al Seraji's Counsel a letter informing him about the administrative appeals process (Letter, Exh. A, Doc. 40-2), but Al Seraji chose not to exercise his right, even though he could have filed an appeal while continuing to litigate this case. Perhaps the ALJ will find good cause to extend the deadline retroactively, *see* 49 C.F.R. § 1515.11(c), or Al Seraji may have to file a new appeal under 49 C.F.R. § 1515.9. Either way, Al Seraji cannot avoid administrative exhaustion by consciously choosing not to exercise his right to an administrative appeal.

The district court's decision in *Mohamed v. Holder*, 995 F. Supp. 2d 520 (E.D. Va. 2014), is not to the contrary. There, because the plaintiff had a valid APA claim, the district concluded that requiring administrative exhaustion of the freestanding constitutional claims would "essentially bifurcate substantially related, if not common, claims and create, rather than avoid, piecemeal litigation." *Id.* at 534. As noted below, this Court does not have jurisdiction to adjudicate Al Seraji's APA claim, so there is no concern of bifurcation. Further, the district court concluded in *Mohamed* that the DHS Traveler Redress Inquiry Program was unlikely to create a more complete administrative record or resolve any of the plaintiff's constitutional challenges. *Id.* Indeed, after the TSC completed a TRIP adjudication, the petitioner received only a perfunctory letter that did not disclose whether the petitioner was even on the No-Fly List, much less provide reasons for the petitioner's status. *Id.* at 527. By contrast, the ALJ appeal process of TWIC applications carries the potential to supplement the administrative record and substantially narrow the number of constitutional questions.

| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |
|---|---|

**CIVIL MINUTES – GENERAL**

| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
|---|---|
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

In sum, finding all the factors identified in *California Care Corporation* favor administrative exhaustion, the Court DISMISSES Al Seraji's first cause of action against the Official Capacity Defendants for failure to exhaust administrative remedies.

**B.     Subject Matter Jurisdiction**

This Court, however, cannot mandate exhaustion of Al Seraji's APA claim unless exhaustion is "expressly required by statute or . . . an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). The Official Capacity Defendants acknowledged, both in their Reply and at oral argument, that no statute or regulation mandates exhaustion of Al Seraji's Administrative Procedure Act cause of action.[3] (Reply at 11, Doc. 49.) So, the Court must consider whether it has subject matter jurisdiction over Al Seraji's APA claim.

"Section 46110 grants exclusive jurisdiction to the federal courts of appeals to 'review' the 'orders' of a number of agencies,' including TSA, DHS, and the Federal Aviation Administration ('FAA')." *Latif*, 686 F.3d at 1127 (quoting *Ibrahim*, 538 F.3d at 1254). To the extent that section 46110 grants the courts of appeals jurisdiction over certain "orders," it divests the district courts of jurisdiction over those agency decisions. *See Latif*, 686 F.3d at 1127. The court of appeals jurisdiction similarly extends to claims that are "inescapably intertwined with a review of the procedures and merits surrounding the . . . order." *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006).

In *Gilmore*, the Ninth Circuit held that a due process vagueness challenge to a TSA security directive fell within the purview of section 46110. 435 F.3d at 1133 n.6. The panel observed that the term "order" in 46110 has been given a "broad construction"

---

[3] As *Darby* observes, the doctrines of finality and exhaustion are conceptually distinct. 509 U.S. at 144.  An agency may have reached a "final" decision "that inflicts an actual, concrete injury" even if the petitioner has not exercised available administrative appeals.  509 U.S. at 144 (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

to encompass "any agency decision which imposes an obligation, denies a right, or fixes some legal relationship." *Gilmore*, 435 F.3d at 1132 (quoting *Sierra Club v. Skinner*, 885 F.2d 591, 592 (9th Cir.1989); *Crist v. Leippe*, 138 F.3d 801, 804 (9th Cir.1998)). Based on this definition, the Ninth Circuit held that the security directive was an "order" under section 46110 because it was accompanied by an administrative record, had a "direct and immediate" effect on passengers, and was a definitive statement of agency policy. 435 F.3d at 1133. The plaintiff's void-for-vagueness constitutional challenge, *Gilmore* concluded, was "'inescapably intertwined' with a review of the order because it "squarely attack[ed] the orders issued by the TSA with respect to airport security." *Id.* at 1133 n.9.

      Likewise, in *Ibrahim*, the Ninth Circuit held that a district court lacked jurisdiction to consider an APA challenge to the heightened security measures imposed by a security directive on those on the "No-Fly List." 538 F.3d at 1256. Because the heightened security procedures were embodied in a security directive—which was an order subject to review under section 46110—the district court lacked jurisdiction. 538 F.3d at 1257. *Ibrahim*, however, concluded that the district court had jurisdiction over the plaintiff's placement on the "No-Fly List" because the Terrorist Screening Center is not one of the agencies that the court of appeals has jurisdiction over under section 46110. *Id.* at 1255-56; *see Latif*, 686 F.3d at 1130 (characterizing *Ibrahim* as holding that district courts have original jurisdiction "over travelers' substantive challenges to inclusion on the List").

      Because Al Seraji's Second Amended Complaint is hardly a model of clarity, the Court asked his Counsel what "final agency action" he was challenging under his APA claim:

> THE COURT: What final agency action are you challenging?
> MR. SWIFT: The rules that they put into place, Your Honor.
> THE COURT: The rules that the TSA --
> MR. SWIFT: Yes. Utilizing the – their utilization under the APA of the terrorist database as a reason to deny.

(Tr. 28:9-16.) Like in *Gilmore*, Al Seraji's APA claim "squarely attacks" an order issued by the TSA—specifically, 49 C.F.R. § 1572.107, a TSA regulation that allows the TSA to

| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |
|---|---|

**CIVIL MINUTES – GENERAL**

| Case No. 8:16-cv-01637-JLS-JCG | Date: April 28, 2017 |
|---|---|
| Title: Mohamed Al Seraji v. Huban A. Gowadia et al. | |

deny a TWIC application based on a search of various databases. This rule was issued after notice-and-comment procedures and is plainly subject to review under section 46110. *See Transportation Worker Identification Credential (TWIC) Implementation in the Maritime Sector; Hazardous Materials Endorsement for a Commercial Driver's License*, 72 Fed. Reg. 3492 (Jan. 25, 2007). Because this Court lacks jurisdiction over Al Seraji's APA challenge, the Court DISMISSES the claim.

### IV.     CONCLUSION

      For the foregoing reasons, the Court GRANTS the Official Capacity Defendants' Motion to Dismiss Al Seraji's first cause of action for failure to exhaust administrative remedies and GRANTS Defendants' Motion to Dismiss Al Seraji's second cause of action for lack of subject matter jurisdiction. As this is a dismissal for failure to exhaust administrative remedies and lack of subject matter jurisdiction, the dismissal is WITHOUT PREJUDICE. The clerk is instructed to close the case.

                                                      Initials of Preparer: tg